Rockingham
No. 82-390

JOYCE SANBORN

v.

THEODORE SANBORN

August 31, 1983

*Kahn, Brown, Bruno & Durmer*, of Manchester (*George C. Bruno* on the brief and orally), for the plaintiff.

*Karelitz, Cohen & White*, of Haverhill, Massachusetts, and *Edward E. Williams*, of Exeter (*Robert J. White* and *Mr. Williams* on the brief, and *Mr. Williams* orally), for the defendant.

DOUGLAS, J. This case involves an appeal from a superior court order denying the plaintiff's motion to "clarify" a divorce decree awarding joint legal custody of the parties' children and granting the defendant certain contested visitation rights. The questions presented by this appeal are: (1) whether the standard for modifying physical custody of children is applicable to a modification of legal custody; and (2) whether the visitation provisions of the decree established a preference for the defendant's religion over that of the plaintiff in violation of the establishment clause of the United States Constitution. We affirm the superior court's award of joint legal custody, vacate the visitation provisions, and remand the case for further proceedings in light of this opinion.

The plaintiff, Joyce Sanborn, and the defendant, Theodore Sanborn, were married in November 1970 in a Methodist ceremony in Methuen, Massachusetts. Two years later, the parties moved to New Hampshire where they raised their two children, Tracy and Theodore, Jr., who were eight and four years old, respectively, at the time of this divorce. When the parties were married, the plaintiff was a member of the Methodist Church; the defendant converted to that religion in 1979, although he admits to being a "very poor attendant."

The differences leading to the parties' divorce in 1981 first arose when the plaintiff became interested in, and was eventually "baptized" into, a religious sect called the World Wide Church of God. The Church's tenets include celebration of the Sabbath on Saturday, disavowal of traditional Christian holidays such as Christmas and Easter, adherence to certain dietary restrictions, and belief in faith-healing. As the plaintiff became increasingly indoctrinated into the teachings of the Church, "a definite lack of communication" developed between her and her husband.

The parties' alienation from one another increased when the plaintiff began bringing the children with her to Sabbath services on Saturday. At one point, the plaintiff testified that her husband took the children "screaming from [her] arms" in order to prevent them from attending services. In 1981, the parties' differences

reached the breaking point, and the plaintiff filed a libel for divorce based upon irreconcilable differences. The defendant subsequently filed a cross-libel for divorce, also based on no-fault grounds. Custody of their two minor children was, and has remained, a major point of contention.

On January 22, 1981, at a hearing before a Master (*Gary R. Cassavechia*, Esq.) on the issue of temporary custody, the defendant testified that he opposed the plaintiff's having custody of the children because he feared that her newfound religion would have harmful physical and psychological effects upon them. Specifically, he expressed concern that, as his wife's religious zeal grew, she might begin denying the children necessary medical treatment. The defendant later admitted, however, that were it not for his wife's religion, the children would probably be better off under their mother's care. The plaintiff testified that she had never denied her children medical treatment and did not intend to do so if she were awarded custody. She also maintained that the children's best interests required that they be allowed to remain with her because she would have more time to spend with them.

Following the hearing, Attorney Steven G. Shadallah was appointed as guardian ad litem for the children. In his report, he recommended that sole legal custody be awarded to the defendant. He stated:

"It is the opinion of the G.A.L. that though the Plaintiff is characterized as an excellent mother she is very disturbed, confused and upset at this time in her life. Though she is deeply and genuinely concerned about her children, she gives the impression that her new-found religion is her principal concern in her life and this is evident from the fact that she rarely speaks without making a religious reference. The G.A.L. was not so much impressed or influenced by the nature or kind of religion with which the Plaintiff is associated, as he was by the extent of the Plaintiff's involvement with the religion.

The Plaintiff seems to live her life entirely by the dictates of her new religion with no room for independent thought or expression. This is evidenced in part by her refusal to temper any of her religious beliefs for the welfare or benefit of those around her, including her own children.

The intensity with which the Plaintiff follows her religion seems to be affecting the children too or at least the parties' oldest child Tracy. For an 8 year old girl she is

highly indoctrinated with admittedly unorthodox religious teachings and at times she does not seem to be concerned with what other children her age might be concerned. Tracy does express the wish to live with her mother, not out of any dislike for her father but because of her mother's ability to spend more time with her which she admits is because she does not work.

It is the opinion of the G.A.L. that the children would be better off in the custody of their father for the time being and if the circumstances of the Plaintiff's life should change they should probably be returned to their mother who, even the Defendant admits, ought to have custody because of her greater ability and time to care for the children."

The master recommended that the defendant's cross-libel for divorce be granted, but that the plaintiff be awarded sole physical and legal custody of the children, notwithstanding the guardian ad litem's recommendation that custody be awarded to the defendant. On July 24, 1981, the Superior Court (*Bean*, J.) approved the master's recommendations. The divorce decree, however, imposed the following restrictions upon the plaintiff's freedom to raise the children according to the teachings of the World Wide Church of God:

"1) . . . [T]hat pending further order of the Court or agreement of the parties the children will continue to receive the medical care, and attention which was customary while the parties were married; that she will keep the Defendant apprised of, and will consult him, with regard to any illness of the children (physical or mental of extended duration (more than two days)) and *the treatment to be employed*; that she will *neither directly or indirectly encourage the children to become members or participants of the World Wide Church of God or to be taught or instructed with regard to its tenets, disciplines or teachings*; and that she will not discourage the children, directly, or indirectly, from continuing to practice and/or observe the Methodist religion or the Christian traditions, holidays and beliefs under which they were raised and reared prior to her membership in the World Wide Church of God.

2) That the Defendant be given liberal and reasonable rights of visitation, including without limitation, and by way of a minimum schedule only, every other weekend from 9:00 A.M. Saturday through Sunday at 6:00 P.M.;

*Saturday on the weekends he does not have full weekend visitation, from 9:00 A.M. through 6:00 P.M.*; on Sunday of any weekend he does not have full weekend visitation, for such time as may be reasonably required for the children to participate in Methodist Church services; Christmas Eve, Christmas Day, Easter and alternate remaining holidays during each year; Father's Day; and alternate birthdays of each child."

(Emphasis added.) The above-quoted portion of the divorce decree thus manifested a singular preference for the defendant's religion.

Shortly after the foregoing decree was entered, the defendant filed a motion to modify the decree, requesting that he be granted sole physical and legal custody of the children. The plaintiff responded by filing an objection to the defendant's motion and a request captioned "Motion to Modify Restraints upon Religious Freedom." On June 21, 1982, the Superior Court (*Contas, J.*), acting upon the recommendations of the same master involved in the initial divorce decree, modified that decree and awarded the parties *joint legal* custody of the children, with primary *physical* custody with the plaintiff. Neither party had requested joint legal custody. The court also vacated the above-quoted portions of the decree which referred explicitly to the plaintiff's religion, and altered the defendant's visitation schedule as follows:

"[T]he Defendant is awarded reasonable and liberal physical custodial rights to and with his minor children, including without limitation, and by way of a minimum schedule only every other weekend from 9:00 A.M. Saturday through Sunday at 6:00 P.M., *Saturday on the weekends he does not have full weekend visitation from 9:00 A.M. through 6:00 P.M., Christmas Eve, Christmas Day, Easter* and alternate remaining holidays during each year; Father's Day; alternate birthdays of each child; two consecutive weeks during the months of July or August of each year; and one-half of each school vacation during the school year."

(Emphasis added.)

On July 15, 1982, the plaintiff filed a motion for clarification in which she asserted that the visitation schedule, even as modified, "establishe[d] a preference for the defendant's religious practice" by allowing the defendant to spend Christian religious holidays with the children, but denying the plaintiff similar rights with regard to her own religious holidays, and by effectively preventing the plaintiff from ever attending her church's weekly Saturday services with

her children. The court denied the motion without opinion, and the plaintiff brought this appeal.

The plaintiff first argues that, under our decision in *Perreault v. Cook*, 114 N.H. 440, 322 A.2d 610 (1974), the trial court could not lawfully modify the children's *legal* custody in the absence of new findings of fact indicating a change in circumstances affecting their welfare. We find the plaintiff's reliance on *Perreault* to be misplaced.

In *Perreault v. Cook*, this court formulated a standard by which modifications of child custody decrees are to be judged. Although not explicitly stated therein, a reading of that opinion clearly indicates that the standard we set forth applies only to changes in *physical* custody:

> "The stability of family relationships is recognized as an essential ingredient in nurturing the healthy psychological development of a child. . . . The shuffling of a child back and forth between a father and mother can destroy his sense of security, confuse his emotions, and greatly disrupt his growth as an individual. . . . The relationship established by the custody award should not be disturbed unless the moving party demonstrates that the circumstances affecting the welfare of the child have been so greatly altered that there is a strong possibility the child will be harmed if he continues to live under the present arrangement."

*Id.* at 443, 322 A.2d at 612 (citations omitted).

It is apparent that the considerations involved in modifying the *physical* custody of a child are inapposite to a modification of *legal* custody. While the award of joint legal custody in the instant case will involve the defendant in many important child-rearing decisions, such as schooling, discipline, and medical treatment, such a change will certainly not be as inherently unsettling to the children as would a change in their physical surroundings resulting from a modification of physical custody. Indeed, it is not difficult to imagine situations in which a change in legal custody would go unnoticed by the children. We therefore find the *Perreault* standard to be inapplicable to changes in legal custody.

A better rule in the case of changes of legal custody, we think, is to allow the trial court discretion to modify legal custody whenever it finds such a change to be in the best interests of the child. We have long held this standard to be the proper one to be applied in custody disputes. *See, e.g., Case v. Case*, 121 N.H. 647,

651, 433 A.2d 1257, 1260 (1981); *Wonser v. Wonser*, 120 N.H. 436, 437, 415 A.2d 881, 882 (1980); *Ballou v. Ballou*, 118 N.H. 463, 464, 387 A.2d 1169, 1169–70 (1978). Because the court's paramount consideration in custody cases is the child's welfare, the authority to award joint legal custody should extend to instances where, as here, neither party sought it. *See Wonser v. Wonser*, 120 N.H. at 437–38, 415 A.2d at 882; *see also* Note, *Joint Custody Awards: Toward the Development of Judicial Standards*, 48 FORDHAM L. REV. 105, 123–24 (1979). Based upon the record before us, we cannot say that, under the best-interests-of-the-child standard, the trial court's modification awarding the parties joint legal custody was an abuse of discretion.

■ The plaintiff further argues that RSA 458:17 (Supp. 1981), the joint-custody statute, which became effective while the parties' motions for modification were pending, should not be applied retroactively to the preexisting custody decree. Because there is scant evidence that the trial judge based his modification of the custody decree upon RSA 458:17 (Supp. 1981), and because the trial judge's decision is fully justified under the common law existing prior to enactment of the statute, *see Wonser v. Wonser*, 120 N.H. at 437–38, 415 A.2d at 882, we find the plaintiff's argument to be without merit. We therefore do not decide whether the result in this case would be the same if RSA 458:17 (Supp. 1981) were applied. For the foregoing reasons, we affirm the court's award of joint legal custody.

■■ Turning to the plaintiff's claim that the visitation provisions of the divorce decree are unconstitutional, we note that, as a general rule, the award of visitation rights rests within the trial court's sound discretion, and the exercise of such discretion will not be disturbed unless it clearly has been abused. *Chasan v. Mintz*, 119 N.H. 865, 867, 409 A.2d 787, 788 (1979). It is axiomatic, however, that the trial courts of this State, no less than this tribunal, are bound by the strictures of the Federal Constitution, and that violation of its precepts constitutes the most basic form of abuse of discretion. *See Munoz v. Munoz*, 79 Wash. 2d 810, 813–14, 489 P.2d 1133, 1135 (1971).

■ The first amendment to the United States Constitution, made applicable to the States through the fourteenth amendment, *Everson v. Board of Education*, 330 U.S. 1, 8 (1947), commands that a State "shall make no law respecting an establishment of religion . . . ." U.S. CONST. amend. I; *see also* N.H. CONST. pt. I, art. 6. This language has been interpreted as committing the States to a position of "neutrality" between religions. *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968).

■ Any State action, such as the visitation decree at issue here, which is claimed to be in violation of the establishment clause, must satisfy three criteria in order to pass constitutional muster: (1) the challenged action must have a secular purpose; (2) its principal or primary effect must neither advance nor inhibit religion; and (3) it must not foster excessive government entanglement with religion. *Larkin v. Grendel's Den, Inc.*, 103 S. Ct. 505, 510 (1982); *see Opinion of the Justices*, 113 N.H. 297, 300, 307 A.2d 558, 559 (1973).

■ Applying this constitutional principle to the consideration of the parents' religions in a child custody case, we recently indicated that courts must refrain "from evaluating the merits of differing religious beliefs," and consider the parties' religions solely as they relate to "the concerns and temporal welfare" of the children. *Provencal v. Provencal*, 122 N.H. 793, 798–99, 451 A.2d 374, 378 (1982). Other jurisdictions addressing the role of religion as a factor in child custody cases have reached similar conclusions. *See, e.g., Bonjour v. Bonjour*, 592 P.2d 1233, 1239–40 (Alaska 1979); *Osier v. Osier*, 410 A.2d 1027, 1029–30 (Me. 1980); *Levitsky v. Levitsky*, 231 Md. 388, 398, 190 A.2d 621, 626 (1963); *Waites v. Waites*, 567 S.W.2d 326, 333 (Mo. 1978); *Munoz v. Munoz*, 79 Wash. 2d at 813, 489 P.2d at 1135.

■ Turning to the case at bar, we note that because there was no transcript of the proceedings from which the initial divorce decree and subsequent modification issued, review by this court would generally be limited solely to determining whether any error of law is apparent on the face of the decree. *Orford Teachers Assoc. v. Watson*, 122 N.H. 803, 804, 451 A.2d 378, 379 (1982); *Baker v. Dennis Brown Realty*, 121 N.H. 640, 644, 433 A.2d 1271, 1273 (1981). However, the record in this appeal is not limited to the modified divorce decree, but includes all documents, transcripts, and exhibits relating to the case since the filing of the plaintiff's divorce libel. N.H. SUP. CT. R. 13.

This record has become so permeated with references to the World Wide Church of God and its practices, taking up well over half of the transcript of the temporary custody hearing and a large portion of the decree before it was modified, that the issue cannot be ignored simply because explicit religious references may not appear on the face of the decree itself after it was modified. Even as modified, the divorce decree clearly indicated a preference for the defendant's religion over that of the plaintiff in at least two respects.

First, the decree awarded the defendant visitation rights on Christmas Eve, Christmas Day, and Easter, but did not make similar provisions for the plaintiff's religious holidays, such as Feast of

Trumpets and Feast of the Tabernacle. Second, the decree allowed the defendant visitation every Saturday, thus preventing the plaintiff from ever attending services on her Sabbath with her children.

 We believe that the visitation provisions of the divorce decree, considered in light of the underlying record, do not satisfy the second of the establishment clause criteria, *i.e.*, their primary effect is to advance the defendant's religion while inhibiting that of the plaintiff. There is no evidence that the attendance of the parties' minor children at the services of the plaintiff's church endangered their physical or temporal welfare. The defendant himself testified that his wife had never denied medical treatment to the children during their marriage, and the plaintiff testified that she did not intend to do so if she were awarded custody. The mere possibility that, at some unspecified future time, the plaintiff might refuse her children needed medical care is wholly speculative and therefore legally insufficient to justify the court's infringement of the plaintiff's constitutional right. *See Osier v. Osier*, 410 A.2d at 1031 n.6 and accompanying text.

 Such an infringement upon the plaintiff's constitutional right would have had to be based upon an affirmative and specific finding, supported by *substantial* evidence, that the children's welfare was *in fact* jeopardized. *Id.* Instead, the court appears to have placed the State's imprimatur upon the defendant's admittedly more traditional religion. This the Federal Constitution will not permit. The only conclusion we can draw from the record in this case is that the trial court impermissibly framed the visitation order in such a way as to foster the defendant's religion over that of the plaintiff.

We vacate the portions of the divorce decree relating to visitation and remand the case for further proceedings consistent with this opinion.

*Affirmed in part; vacated in part; remanded.*

BOIS, J., did not sit; the others concurred.