In re the Marriage of Rita J. ANDROS, n.k.a. Rita J. Olson, Respondent,

v.

David L. ANDROS, Appellant.

No. CO–86–867.

Court of Appeals of Minnesota.

Dec. 9, 1986.

Norbert P. Smith, Walker & Smith, Mankato, for respondent.

Michael K. Riley, Sr., MacKenzie, Gustafson, & Lucas, St. Peter, for appellant.

Heard, considered, and decided by RANDALL, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

RANDALL, Presiding Judge.

This is an appeal from an amended judgment and decree entered February 27, 1986, terminating joint legal custody and ordering sole legal and physical custody in respondent, Rita Andros, n.k.a. Rita Olson. The original judgment and decree entered June 27, 1983, ordered joint legal custody, physical custody in respondent, and reasonable liberal visitation for appellant.

The court denied appellant's post-hearing motion to amend and clarify the amended judgment and decree to allow visitation on the children's birthdays and on Sundays and to "amend" the termination of joint legal custody. David Andros appealed this denial on May 7, 1986.

On June 6, 1986, appellant took the children to a faith healing meeting. He admittedly misrepresented to respondent and the children the nature of the visit. This prompted respondent to move the trial court for an order restraining appellant's attempts to involve the children in his religious activities. Respondent also moved for a modification of visitation. The court held two hearings on her motion. The first hearing was in court, and the second included an in camera interview of the children with the parties' attorneys present.

The court denied respondent's motions ruling that when appellant filed a notice of appeal in May, that deprived the trial court of further jurisdiction. However, the trial court did issue an order clarifying the amended judgment and reinforcing respondent's exclusive control over the children's religious upbringing.

Prior to oral arguments, the parties filed with this court a stipulation to modify and supplement the record by including the record of the two hearings conducted after the notice of appeal was filed. A special

term panel referred the issue of including the post-judgment record to this panel.

We affirm on all issues.

## FACTS

The parties were divorced in 1983 and have two children, ages ten and eight. At the time of the divorce, the parties stipulated to joint legal custody with physical custody in respondent. Since entry of the decree, both parties have remarried. At the time of respondent's remarriage, the parties began to have significant disputes over appellant's desire to include the children in his church activities. Some of these disputes took place in front of the children. Appellant is a member of the Assemblies of God Church, respondent is Lutheran.

Respondent feared that appellant was attempting to convert the children to his faith. She also feared that appellant was demeaning her religious beliefs to the children. Respondent was concerned about the effect of appellant's rigid and inflexible approach to religion on the children. Appellant held very fundamental beliefs. He told the children that halloween costumes were symbols of the devil, destroyed a "God's Eye" that one of the children made him as a Valentine's day gift, and informed the children that there was no Santa Claus or Easter Bunny.

Respondent eventually refused to allow appellant to have the children on Wednesday evenings and Sundays, the days appellant would take the children to the Assemblies of God church.

Respondent contends that the children consider themselves to be Lutheran. They attend First Lutheran Church with respondent. The parties' oldest daughter is enrolled in Lutheran confirmation classes. Both daughters attend Lutheran Sunday school and Wednesday evening recreational activities. They belong to the First Lutheran Church choir.

Appellant moved for a specific visitation schedule, claiming respondent was interfering with his visitation rights. Respondent countermoved for an order terminating joint legal custody and awarding her sole legal custody. She claimed that the parties could no longer cooperate in the rearing of the children, specifically their religious upbringing.

Both parties planned to offer testimony on their respective religions. Prior to the hearing, appellant requested that the court refuse consideration of respondent's motion for an order prohibiting appellant from taking the children to his church. Appellant claimed that respondent's motion would involve excessive government entanglement in religious matters. He claimed that the hearing would put the merits of each religion against the other. The court denied appellant's request and heard respondent's motion.

Appellant testified that during visitation he involved the children in other activities in addition to church activities. As a father, he sees his role as developing his children's moral character. He testified that he supports their attendance at respondent's Lutheran church. He also testified that when the children have attended his church they have reacted well and enjoyed involvement in children's activities. Respondent testified that the children returned home from visits to appellant's church in an "extremely upset and emotional state indicating * * * that I was going to hell because I did not go to the correct church."

Appellant's minister, John McAchran, testified that the Assemblies of God church is fundamentalist, charismatic, and pentecostal. The members believe in a literal interpretation of the bible and claim that they speak in tongues. McAchran testified that appellant joined his church around the time of the divorce. Since then appellant has discussed with McAchran the children's attendance at services. McAchran testified that appellant has not criticized respondent in his presence.

Kevin R. Maly, respondent's minister, testified on the differences between the two churches. He stated that Assemblies

of God teachings necessarily involve some rejection of Lutheran theology.

Appellant's new spouse testified that, although she is Catholic, she now regularly attends church with appellant. She testified that she was aware of respondent's objections to the children's participation in Assemblies of God activities.

Respondent presented testimony from Dr. William Scurry, a licensed consulting psychologist. Dr. Scurry examined respondent for an hour and the children separately for forty-five minutes to an hour in preparation for his testimony. He testified that the children are equally fond of both parents, and have suffered no permanent damage as a result of the divorce.

In response to a hypothetical question posed by both attorneys, Dr. Scurry offered his opinion that attendance at two churches with beliefs and practices as divergent as in this case may endanger the children's emotional health.. He believed that because the children are so closely bonded with both parents, they feel a need to try to please both. However, the children know that to please one parent necessarily involves displeasing the other.

Appellant objected on foundation grounds to Dr. Scurry's testimony on the effect of the parties' dispute on the children. He based his objection on the ground that Dr. Scurry had not studied the differences between the two religions. Appellant felt that Dr. Scurry's limited knowledge of the differences between the practices of the two religions was insufficient foundation for his testimony on the effects of the religious differences on the children.

Respondent's husband witnessed some of the visitation conflicts. He testified that appellant would not give respondent a definite time when he would be bringing the children home from a visit, and that often appellant would attempt to arrange visits when he knew the children were going to be involved in another scheduled activity. Respondent's spouse testified that on more than one occasion, when the children knew their father was picking them up to take them to his church, the children would ask

respondent to tell appellant that they did not want to go to church with him. He also testified that, in the presence of the children, appellant would accuse respondent of trying to influence the children against his religion.

After a day-long hearing, the court terminated joint legal custody, finding that the situation posed a threat to the children's emotional health. The court found that, while the parties were initially able to cooperate, a serious conflict over visitation began when respondent remarried. From then on, the parties were unable to agree about the children's religious upbringing. This disagreement caused problems with visitation. After finding a substantial conflict between the beliefs and practices of the parties' religions, the court found:

7. That, as this conflict is made evident to the children through the parties, either by direct conversation or by the parties through the practice of their religion, it creates a conflict in the children because of their love for each parent, their desire to please each parent, and that, that conflict at this age has not caused any emotional damage but is very likely to impair the emotional development of the children.

\* \* \* \* \* \*

9. That there has been no impairment of emotional health up to this point, because the children have been affected only by the exteriors of the conflict because of their age and ability to perceive the differences in beliefs and practices, but that in the immediate future the differences, other than exterior only, will, in all likelihood, endanger their emotional development.

The court scheduled visitation to preclude appellant from taking the children to his church. The court denied appellant's subsequent motion for an order "amending or clarifying" its termination of joint legal custody and the visitation schedule.

After the court denied appellant's motion and after appellant filed the notice of appeal, an incident occurred which prompted

respondent to move the trial court for an amendment of the visitation schedule and for an injunction restraining appellant from involving the children in religious activities. On June 6, 1986, appellant exercised his visitation rights. He informed respondent and the children that he was taking them to his brother's home to see their new baby cousin. When appellant returned the children home at 1:00 a.m., the youngest child informed respondent that appellant had taken the children to a five-hour faith healing meeting. At the meeting, appellant instructed the oldest daughter to "go forward" and be healed. He told the daughter that one of her legs was shorter than the other and that she needed to be healed. The daughter has scoliosis and is under medical treatment for the condition.

The children were upset and disappointed that appellant misinformed them about the nature of the visitation. The judge questioned the children in chambers about the incident. They testified that they would rather not go to such meetings and that they were "a little afraid" at the events of that evening. The judge also questioned the children about an upcoming Assemblies of God bible camp trip. The children said that they would rather not go. They told the judge that they were afraid to tell appellant that they did not want to go to camp because they did not want to hurt his feelings and because he was difficult to talk to. While the court denied respondent's motions on the ground that filing the notice of appeal deprived it of jurisdiction, it made the following clarification:

> [I]t should be noted that [respondent] was granted sole legal and physical custody of the children. She is thus exclusively empowered by law to establish the religion or creed to be practiced by the children. Therefore, she is empowered to prevent the children from participating in religious practices which she deems to be in contradiction with those she desires for the children, including but not limited to, religious oriented visitation plans proposed by the respondent.

## ISSUES

1. Did the trial court err by terminating joint legal custody and awarding sole legal and physical custody to respondent?

2. Did the trial court err by admitting testimony of respondent's psychologist on the issue of the children's emotional development?

3. Did the trial court err by modifying the visitation schedule?

## ANALYSIS

### I.

*Joint Legal Custody*

The trial court's findings on custody will be sustained unless clearly erroneous. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). Modification of custody is governed by Minn.Stat. § 518.18 (1984) which states in part:

> (d) If the court has jurisdiction to determine child custody matters, the court shall not modify a prior custody order unless it finds, upon the basis of facts that have arisen since the prior order or that were unknown to the court at the time of the prior order, that *a change has occurred in the circumstances* of the child or his custodian and that the modification is necessary *to serve the best interests of the child.* In applying these standards the court shall retain the custodian established by the prior order unless:

> \*      \*      \*      \*      \*      \*

> (iii) The child's present environment *endangers his physical or emotional health* or impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

*Id.* (emphasis added). A court considering modification of joint custody must also review the factors of Minn.Stat. 518.17, subd. 2 (1984):

> (a) The ability of parents to cooperate in the rearing of their children;

9

2

(b) Methods for resolving disputes regarding any major decision concerning the life of the child, and the parents' willingness to use those methods; and (c) Whether it would be detrimental to the child if one parent were to have sole authority over the child's upbringing.

*Id.*

Appellant argues that the court failed to consider whether the best interests of the children would be served by allowing one parent to exercise sole authority over the children's upbringing. The court made a specific finding that allowing one parent to have sole authority would have no detrimental effect. This finding conforms with the statute.

■ We have reviewed the remaining findings and hold that they satisfy the statutory requirements for a modification of custody. Once the court determined that modification was appropriate, it properly awarded sole legal custody to respondent, whom the court found to be the custodian and primary caretaker of the children.

Appellant acknowledges respondent's opposition to the children's attendance at the Assemblies of God church, but he argues that her unilateral opposition to exposing the children to both religions does not constitute a "dispute." He argues that in order for the § 518.17, subd. 2 standard of "lack of cooperation" to be met, *both* parties must disagree on the religious upbringing of the children. His argument does not convince us.

The parties' serious and prolonged disagreement on the children's religious upbringing constitutes a dispute. Common sense does not allow us to call it anything else. The deciding factor is not whether one party approves of the status quo, but whether the parties substantially disagree with each other on a material issue. We find a substantial disagreement here.

*Andersen v. Andersen,* 360 N.W.2d 644 (Minn.Ct.App.1985), wherein this court affirmed post-decree termination of joint physical and legal custody, based on the parties' lack of cooperation, gives us guidance. The Andersens were divorced in 1981 and thereafter sought court assistance on several occasions to settle disputes over custody and support. In 1983 a referee reviewing the matter continued joint custody but set up a specific visitation schedule and restrained the parties from attempting to involve the child in their hostilities. On review, a district court judge vacated the referee's order and terminated joint custody, finding that continued exposure to the parents' disagreement endangered the child's health and development by trapping her in a "tug-of-war" between the parents. This court affirmed the district court.

The evidence supports the court's finding that the parties' continual dispute over the children's religious upbringing endangers the children's emotional well being by placing them in the middle of a "tug-of-war" similar to that in *Andersen.* The parties hold strong opposing religious convictions, and have offered the court no mutually satisfactory means of resolving their dispute.

Appellant argues that the court's finding of future emotional endangerment is insufficient to satisfy the statutory standard. Although Dr. Scurry testified that the children are not currently suffering emotional trauma due to the parents' dispute, the court accepted his expert opinion that further exposure of the children to hostilities between their parents will likely cause emotional damage in the future. Evidence showed that the children's acceptance of the father's religion necessarily involved rejection of the mother's, and caught the children in the battle between their parents.

Joint legal custody, to be successful, relies on the parents' ability to cooperate and resolve their disputes. Here, where the parents hold deep commitments to their religions, where both are equally desirous of involving the children in their religions, and where mutual cooperation is not possible, the dispute is sufficiently serious to support the trial court's finding of a danger to the children's emotional health.

We hold that the court's findings that the parents are unable to agree on the children's religious upbringing, that they are unable to devise a method for resolving their disputes, and that the conflict endangers the children's future emotional health are supported by the evidence. The evidence is sufficient to affirm the court's termination of joint legal custody. Once the court terminated joint legal custody, it properly determined that the mother should be the sole legal and physical custodian. *See Pikula v. Pikula,* 374 N.W.2d at 711.

## II.

*Admission of Expert Testimony*

■ The determination whether sufficient foundation for an expert's testimony has been laid is in the sound discretion of the trial court. *Sorenson v. Maski,* 361 N.W.2d 498, 500 (Minn.Ct.App.1985). The decision will not be reversed absent a clear abuse of discretion. *Id.*

Appellant claims that the trial court erred by admitting testimony of Dr. Scurry, the psychologist who examined respondent and the children prior to the hearing. At trial, appellant objected to admission of Dr. Scurry's testimony based on lack of foundation, claiming Dr. Scurry had only brief conferences with respondent and the children and did no psychological testing.

Appellant also claims that Dr. Scurry's testimony was not proper evidence and failed to assist the trier of fact. He argues that Dr. Scurry was not qualified to testify about the differences between the two religions. He complains that Dr. Scurry did not observe the children after they attended an Assemblies of God service.

■ In preparation for his examination of respondent and the children, Dr. Scurry spoke with his own pastor concerning the differences between the parties' religions. We do not accept appellant's contention that, in order for Dr. Scurry's testimony to be valid, he must have some special expertise in religion. Dr. Scurry *was qualified* as an expert *to testify on the effect of the* parents' *dispute on* the emotional health of *the children* and the court properly admitted his testimony for that purpose.

■ Appellant contends that the court improperly relied on Dr. Scurry's testimony because Dr. Scurry was unable to quantify the amount of emotional damage to the children caused by the parents' conflict over their religious upbringing. Neither statute nor case law requires an expert to "quantify" emotional damage. Rather, a finding that the children's emotional health is endangered is sufficient to satisfy the statutory requirements. In reaching this conclusion, the court relied on the testimony of Dr. Scurry and all other witnesses.

The court acted within its discretion by admitting Dr. Scurry's testimony. Dr. Scurry's qualifications as a psychologist are not in dispute. The thrust of Dr. Scurry's testimony was not the "doctrine" of either religion, but the effect of the parents' conflict on the children. Other witnesses corroborated his testimony, both on the effect of the dispute on the children and his testimony on the nature of the differences between the two religions. The court based its decision on the testimony of all witnesses testifying during the day-long hearing. We hold that the court did not abuse its discretion by admitting Dr. Scurry's testimony.

## III.

*Visitation*

■ Minn.Stat. § 518.175, subd. 5 (1984) permits courts to modify visitation if modification will serve the best interests of the child. *Chapman v. Chapman,* 352 N.W.2d 437, 441 (Minn.Ct.App.1984). Appellant concedes that visitation remains liberal. However, he claims that restricting visitation so he cannot take the children to his church unduly restricts his relationship with them and abridges his freedom of religion. We disagree. Appellant's freedom to exercise his religious beliefs remains exactly the same as before. The court's order properly gives respondent, not appellant, exclusive control of the chil-

dren's religious training. It is settled law in Minnesota that the custodial parent of minor children has control of the children's religious upbringing. Minn.Stat. § 518.-003, subd. 3(a) (1984).

Appellant further argues that the court's modification of the visitation schedule was based on "impermissible considerations," namely the merits of the parties' respective religions. He argues that considering the merits of different religions led the court to an unconstitutional application of Minn. Stat. § 518.175.

This is a mischaracterization of the trial court's decision. While the court inquired into the differences between the two religions to some extent, it made no judgment based on the merits of either religion. The court inquired into the parties' religious beliefs for the purpose of determining whether the conflict over the parties' religions was serious enough to affect the custody issue. Although the court found that the *conflict* was serious enough to terminate joint legal custody, the court specifically remained neutral on the merits of either religion. The court found:

> 8. That there is nothing in the religious practices of either party which, if practiced singly, would be detrimental to the development of the children's emotional health or welfare.

The court inquired into the nature of the two religions solely for the purposes of evaluating change of custody. This inquiry was necessary to enable the court to evaluate respondent's claims that the difference between the two religions' practices was sufficient to pose a danger to the children's emotional well-being.

█ Appellant urges the court to apply a "compelling state interest" standard to the modification of visitation where controversy centers around the children's religious upbringing. We decline to do so. The court's modification of visitation affects neither appellant's religious beliefs, nor his right to practice his religion. The court's ruling simply repeats the law, a legal custodian has the right to determine the minor children's religious training.

We hold that the court's decision does not affect appellant's constitutional right to freedom of religion. Although appellant's wish to involve the children in his religious activities is now subject to respondent's consent while they are minors, appellant is, and always has been, free to practice his religious beliefs as he sees fit.

The revised liberal visitation schedule formulated by the court does not restrict any other activities of appellant with his children, only his control of their religious training, which Minn.Stat. § 518.003, subd. 3(a) unambiguously gives to respondent, the custodial parent. We hold that revision of the visitation schedule was not an abuse of the trial court's discretion.

### DECISION

The trial court's termination of joint legal custody is supported by the evidence. The court properly admitted testimony of respondent's expert witness on the effects of the parties' continued disagreement over religion on the children. The trial court did not abuse its discretion by scheduling visitation to preclude appellant from taking the children to his church. Respondent, as the legal and physical custodian of the children, has the statutory right to determine the minor children's religious upbringing.

Affirmed.