Carroll
No. 93-745

LOUIS R. BERUBE

v.

THOMAS BELHUMEUR & a.

June 1, 1995

*Cooper, Deans & Cargill, P.A.,* of North Conway (*Randall F. Cooper* on the brief and orally), for the plaintiff.

*Melendy, Gordon & Lee, P.A.,* of North Conway (*Fay E. Melendy* on the brief and orally), for defendants Thomas and Cynthia Belhumeur.

*Upton, Sanders & Smith,* of Concord (*Robert Upton II* on the brief), for defendant Town of Jackson.

JOHNSON, J.  The plaintiff, Louis R. Berube, and defendant Town of Jackson (town) appeal an order in which the Superior Court (*Mohl,* J.) found the plaintiff's tax deed to a condominium unit located in the town to be invalid. This case concerns the sufficiency of a tax sale notice that identifies a condominium unit only by reference to its parcel number on the town's tax map when the parcel number comprises more than one condominium unit. We reverse.

A brief description of the tax sale procedures may assist in understanding the facts of this case. RSA chapter 80 provides for the sale of real property on which payments of property taxes have been delinquent for one year or longer. RSA 80:19 (1991) (amended 1993); RSA 80:20 (1991). At least twenty-five days before the sale, the town tax collector must post notice in two or more public places. RSA 80:21 (1991). The person to whom the tax is assessed is entitled to notice by registered mail. *Id.*

After the required notice is provided, the tax collector may sell the property at a public auction. RSA 80:20; RSA 80:24 (1955) (amended 1989). The tax sale is followed by a two-year redemption period during which "[a]ny person interested in land so sold may redeem" the property. RSA 80:32 (1991) (amended 1991); *see* RSA 80:38, I (1991). To redeem the property, the interested person must pay the tax collector a sum sufficient to cover the outstanding taxes on the

property, incidental charges incurred during the tax sale proceedings, and any subsequent taxes paid by the purchaser. RSA 80:32.

If no one redeems the property during the statutory redemption period, the tax collector executes to the purchaser a deed to the unredeemed land. RSA 80:38, I. At least thirty days before executing the tax deed, the tax collector must notify the current owner of the property by certified mail. RSA 80:38-a (1991); *cf. First NH Bank v. Town of Windham,* 138 N.H. 319, 327–28, 639 A.2d 1089, 1095 (1994) (known mortgagee constitutionally entitled to actual notice of tax sale and tax deeding). If the property is not redeemed, the purchaser receives a tax collector's deed granting the purchaser an estate in fee simple. *United States v. Lord,* 155 F. Supp. 105, 109 (D.N.H. 1957). After obtaining a tax deed, the purchaser may initiate an action to quiet the purchaser's title to the property. RSA 498:5-a (1983) (amended 1992).

In 1985, Spatial Systems Corporation (Spatial) purchased a 12.19-acre parcel of land in the town. The parcel had been approved for the construction of ten condominium units. The ten planned units were grouped into two clusters, 1 and 2, each of which contained five units labeled A through E. Because each unit in cluster 1 was in a different state of construction, each was assessed for a different amount of tax.

As of March 1987, Spatial had not paid the 1985 taxes on any of the five cluster 1 units. Thus, a tax sale was held to satisfy the unpaid taxes, interest, and costs due. *See* RSA 80:20, :24. A tax collector gave notice of this tax sale by posting advertisements that included a description of the property and the amount of outstanding tax, interest, and costs. *See* RSA 80:21. The advertisements listed the five units separately, but described each as "R-8-9A Mt. Jefferson Condo," a reference to the tax map parcel number and the name of the entire condominium development which had been recorded by the selectmen in their assessing records. The units could be differentiated only because the notice specified the amounts due on each one.

At the tax sale, held on April 15, 1987, a tax collector auctioned separately five parcels listed as "R-8-9A Mt. Jefferson Condo," each for a different sum of money. The plaintiff purchased one of those parcels for $70.74. The low price reflected the state of construction on the parcel, which was unit E in cluster 1 (unit E-1). At the time of the sale, the planned condominium on this site consisted only of a cellar hole.

On April 20, 1987, a tax collector prepared a "Report of Collector's Sale of Real Estate." *See* RSA 80:27 (1991). This report was properly recorded and indexed in the Carroll County Registry of Deeds on September 4, 1987. Similar to the notice of tax sale, this report

differentiated the parcels listed as "R-8-9A Mt. Jefferson Condo" by indicating the amount of tax, interest, and costs due on each unit.

In 1988, unbeknownst to the plaintiff, Spatial entered into a purchase and sale agreement with defendants Thomas and Cynthia Belhumeur. Under the terms of this contract, the Belhumeurs agreed to pay $140,000, which would cover the costs of constructing a condominium on unit E-1, and Spatial agreed to issue them a "good and sufficient marketable Quitclaim Deed of the property, free and clear of all encumbrances." This agreement was never signed. The Belhumeurs neither obtained any security to ensure that they would receive clear title to unit E-1, nor recorded the purchase and sale agreement.

By January 1989, the Belhumeurs had paid Spatial $115,000 of the purchase price, and construction of unit E-1 was substantially complete. In February, Spatial executed a warranty deed for unit E-1 to the Belhumeurs. Spatial could not, however, convey clear title because the property was subject to several liens. The Belhumeurs therefore did not record the deed, *see* RSA 477:1, :7 (1992), and in 1990 the Belhumeurs filed a lawsuit against Spatial. The plaintiff first learned of the Belhumeurs' claim to unit E-1 after the filing of the Belhumeurs' lawsuit.

Meanwhile, the redemption period for the units sold at the 1987 tax sale was to expire in May 1989. *See* RSA 80:38, I. Sometime before the expiration date, units A-1, B-1, C-1, and D-1 had been redeemed. No one had redeemed unit E-1. On April 20, 1989, a tax collector tried to notify Spatial that unless it paid the redemption costs before May 31, the plaintiff would receive a tax deed to unit E-1. *See* RSA 80:38-a. The notice was sent by certified mail but was returned marked "unclaimed." Unit E-1 was not redeemed, and the plaintiff received the tax deed on June 19, 1989. The deed was recorded in the Carroll County Registry of Deeds on June 21, 1989.

On October 15, 1990, the plaintiff filed a petition to quiet title in which he named as defendants the town, Spatial, the Belhumeurs and other parties who had acquired liens against unit E-1 after the 1987 tax sale. *See* RSA 498:5-a (1983).

In 1991, the Belhumeurs settled their lawsuit against Spatial. Pursuant to the settlement, the Belhumeurs received title to the land abutting cluster 1, which contained sites for five condominium units. In addition, the Belhumeurs paid various third parties to satisfy the liens against unit E-1 and paid Spatial to complete the unit. The Belhumeurs also accepted from Spatial a warranty deed to unit E-1, which they recorded on September 6, 1991.

In 1993, the plaintiff's petition to quiet title was denied by the Superior Court (*Mohl,* J.), which held that the notice and report of the 1987 tax sale "contained a statutorily insufficient property description so as to make the tax sale invalid and the subsequently conveyed tax

deed null and void." Both the plaintiff and the town appealed the court's ruling.

■ We first address the trial court's finding that the tax collector did not comply with RSA 80:21 or :27. RSA 80:21, entitled "Notice of Sale," requires that when real estate subject to tax liens is to be auctioned at a tax sale, the tax collector must first post a notice that provides a "description of the property as recorded by the selectmen." *Id.* The lower court ruled that the "description of the property in the Notice failed to meet the statutory standards." We will sustain the court's findings and rulings unless we find them to be lacking in evidentiary support or tainted by error of law. *Hawthorne Trust v. Maine Savings Bank,* 136 N.H. 533, 536, 618 A.2d 828, 830 (1992).

The description requirement of RSA 80:21 is satisfied "if the notice describes the property to be sold in a manner to enable one to identify it." *Coleman v. Hooksett,* 111 N.H. 337, 339, 283 A.2d 681, 682 (1971). In *Coleman,* the tax sale notice described the property to be sold as "Ackerson, Mrs. Louise Land and Buildings." *Id.* at 338, 283 A.2d at 682 (quotation omitted). The seven properties involved in the *Coleman* appeal comprised six parcels of land assessed variously from $30 to $170 and one parcel assessed at $1770, upon which there was a building. *Id.* Thus, although the various assessments enumerated in the tax sale notice enabled one to distinguish among the listed properties, they did not enable one to ascertain the precise nature of the properties to be auctioned from the notice alone. This court found the notice to be in compliance with the statute. *Id.* at 339, 283 A.2d at 683.

■ In *Coleman,* a prospective purchaser could have ascertained which properties were for sale by referring to the selectmen's inventory. *Id.* at 338, 283 A.2d at 682. Here, similarly, a prospective purchaser could have ascertained which properties were for sale by referring to the tax collector's books. *See* RSA 41:35, I (1991). The *Coleman* opinion does not indicate whether each of the seven parcels had been assessed for a different amount, as in this case. The Belhumeurs' position in this case, therefore, is as weak, if not weaker, than that of the challenger in *Coleman.* Accordingly, the trial court's holding that the tax sale notice violated RSA 80:21 is erroneous.

■ RSA 80:27, entitled "Report of Sale," requires that following a tax sale, the tax collector file at the registry of deeds a report containing the same description of the property that appeared in the tax notice. Because the description in the report of sale mirrors that in the tax sale notice, the same legal analysis applies to both RSA 80:21 and RSA 80:27. Accordingly, the trial court's holding that the report of sale violated RSA 80:27 is also erroneous.

Our holding that the tax sale notice complied with statutory law does not end our inquiry as to the notice's adequacy. The Belhumeurs argue that if a better description of the property was reasonably ascertainable, then the town violated their State and federal constitutional rights to due process by not providing it.

We will assess the Belhumeurs' due process claim under part I, article 15 of the New Hampshire Constitution. *See State v. Ball,* 124 N.H. 226, 231–32, 471 A.2d 347, 350–51 (1983). Because we find article 15 at least as protective of individual liberties as the fourteenth amendment, *see In re Tracy M.,* 137 N.H. 119, 122, 624 A.2d 963, 965 (1993), we need not conduct a separate due process examination under the Federal Constitution and will cite federal law only to aid our analysis. *See Ball,* 124 N.H. at 232, 471 A.2d at 351.

> In determining whether a particular [governmental] action violates the procedural due process requirement of the State Constitution, we undertake a two-part analysis. First, we determine whether the challenged [governmental] action concerned a constitutionally protected interest. If so, we proceed to determine whether the action was accompanied by the appropriate procedural safeguards.

*Riblet Tramway Co. v. Stickney,* 129 N.H. 140, 145, 523 A.2d 107, 109–10 (1987) (citation and quotation omitted).

We agree with the trial court that the Belhumeurs obtained a protected property interest when they received the deed from Spatial. *Townsend Company v. New Hampshire Auto Co.,* 104 N.H. 81, 84, 178 A.2d 688, 690 (1962) (recording of deed immaterial as to persons with actual knowledge of unrecorded interest). Thus we are left to inquire whether the tax sale procedures sufficiently safeguarded the Belhumeurs' interest.

"For more than a century, the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Vermont Nat'l Bank v. Taylor,* 122 N.H. 442, 446, 445 A.2d 1122, 1124 (1982) (quotation omitted). "The notice must be of such nature as reasonably to convey the required information" and must be more than "a mere gesture." *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 314–15 (1950). However, "'due process of law' does not require ideal accuracy." *Grannis v. Ordean,* 234 U.S. 385, 395 (1914). The decisive question is whether the notice was fair and reasonable under the circumstances. *See Kakris v. Montbleau,* 133 N.H. 166, 173, 575 A.2d 1293, 1297 (1990); *Walker v. Hutchinson City,* 352 U.S. 112, 115–16 (1956).

■ Here, the "Notice of Sale" listed the record owners and a description of each of the nineteen properties to be auctioned at the tax sale. Five of the properties were described as "Spatial Systems Corporation; R-8-9A Mt. Jefferson Condo," and the report of the collector's sale was recorded at the registry of deeds. Such a description would alert anyone reading the notice that any or all of the ten units at the Mount Jefferson site might be auctioned. Accordingly, we find that the tax sale notice provided the Belhumeurs with adequate notice that their property interests might be affected. *Cf. Grannis,* 234 U.S. at 397 (due process satisfied when interested party given reasonable notice of action to partition land); *Licari v. Ferruzzi,* 22 F.3d 344, 348 (1st Cir. 1994); *Vialez v. New York City Housing Authority,* 783 F. Supp. 109, 119 (S.D.N.Y. 1991).

■ The Belhumeurs also argue that the tax collector violated RSA 80:38, I. This provision requires that "[t]he collector, after 2 years from the sale, shall execute to the purchaser . . . a deed of the land so sold and not redeemed." *Id.* The plaintiff received a tax deed to "R-8-9A Mt. Jefferson Condo., Unit E." Because the parcel sold at the tax sale was described only as "R-8-9A Mt. Jefferson Condo.," without reference to the unit letter, the Belhumeurs complain that the plaintiff's tax deed is not "of the land so sold and not redeemed." The statute contains no requirement that tax deed language mirror that of the tax sale notice and report. *See id.* We therefore are unpersuaded by their argument.

*Reversed.*

All concurred.