Rockingham
No. 95-404

SCOTT CHANDLER

v.

MELODY MCGALL BISHOP

November 14, 1997

*Scott Chandler, pro se,* on the brief; and *Carolyn R. Wah,* of Patterson, New York, orally, and *J. Barry Mulhern,* of Londonderry, for the plaintiff.

*Melody McGall Bishop, pro se,* filed no brief.

HORTON, J. In this child custody dispute, the plaintiff, Scott Chandler, appeals the Superior Court's (*Gray,* J.) approval of the recommendation of the Marital Master (*Pamela D. Kelly,* Esq.) denying his motions for contempt and for injunctive relief. He contends that the master: (1) deprived him of the opportunity to question witnesses and adequately present his case; (2) failed to make proper findings; and (3) refused to consider evidence that the parties had modified a court-approved visitation agreement. We affirm in part, vacate in part, and remand.

The plaintiff and the defendant, Melody McGall Bishop, are the unmarried parents of a six-year-old child, Spencer. The defendant has sole legal custody of the child. In May 1993, the parties reached a stipulation on physical custody and visitation that was approved by the superior court. Their agreement provided that the defendant "shall have primary physical custody of the parties' minor child," and "that plaintiff is granted specific periods of physical custody (aka visitation) of the minor child." The agreement specified supervised visitations and set forth a detailed schedule of visitation times for the summer of 1993. The parties stipulated that after August 1993 they would meet with the guardian ad litem to establish a schedule of visitations on alternating Thursdays from 8:30 a.m. to 4:30 p.m. and alternating Saturdays from 8:30 a.m. until 12:30 p.m. The agreement provided that the court would hold a hearing in November 1993 to consider the expansion or contraction of the visitation schedule. The court approved the parties' original stipulation on May 19, 1993.

In June 1993, the parties jointly moved to amend the May 1993 stipulation to increase the plaintiff's visitation on alternating

Saturdays from 8:00 a.m. to 4:00 p.m. The court approved the request for amendment on July 6, 1993.

During the next few months, the parties orally agreed to modify the visitation schedule. The plaintiff was allowed unsupervised visitation on alternate Fridays from approximately 8:00 a.m. to 5:00 p.m. and alternate weekends from Friday afternoon to Sunday afternoon. The parties did not seek court approval of this revised arrangement.

While this modified schedule was in place, the plaintiff, with the defendant's knowledge, began to take the child to Jehovah's Witness religious meetings. In December 1994, after the parties had abided by the modified visitation arrangement for approximately fourteen months, a dispute arose as to the child's attendance at the meetings. As a result the defendant abrogated the modified weekend visitation schedule. The plaintiff responded by filing motions for contempt and injunctive relief.

At an April 1995 hearing before the marital master, the plaintiff sought to maintain visitation as it had been since the parties mutually modified the court-approved agreement. He contended that the defendant was not entitled to alter the modified visitation schedule and thereby deprive him of his opportunity to take his son to religious meetings.

The defendant claimed she was disturbed by her son's statements and behavior following weekend visitations with the plaintiff. According to the defendant, the child told her that "Halloween was the Devil's holiday," "God said Christmas trees are bad," "Santa Claus isn't real, Santa Claus are daddies," and "[t]he Easter bunny isn't real." The defendant also testified that after visits with the plaintiff, the child was belligerent, more difficult to discipline, exhibited poor hygiene, and had lowered self-esteem. According to the defendant, the child's preschool director had noted a marked improvement in the child's attitude after the child ceased overnight weekend visitation with the plaintiff. The defendant asked that visitation be limited as provided in the court-approved stipulation and amendment.

The master recommended that the plaintiff's motions be denied. Finding no outstanding court order beyond that entered on the parties' original stipulation and the amendment thereto, the master ruled that the parties must abide by that order. The master also stated that the defendant's role as Spencer's sole legal custodian gave her the exclusive right to make decisions concerning the child's religious upbringing. The master found that because the plaintiff undermined the defendant's parental authority by denigrating and

disapproving of her holiday celebrations, the defendant had "not responded in an unreasonable or unlawful manner in deciding that the child should no longer attend religious functions or meetings with [the plaintiff]." The plaintiff appealed to this court after his motions for the master to recuse herself and for reconsideration were denied.

■ The plaintiff first argues that the master erred by refusing to extend the time of the hearing and by denying him the opportunity to question the defendant, the only other witness, about statements she had previously made under oath. He also asserts bias on the part of the master in conducting the hearing and rendering her decision. The plaintiff contends he was thus deprived of his due process protections under the State and Federal Constitutions. Because the State Constitution is at least as protective as its federal counterpart, *see Berube v. Belhumeur*, 139 N.H. 562, 567, 663 A.2d 598, 601 (1995), we will not conduct a separate federal analysis but will cite federal law only as an analytical aid. *See State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983).

■ Procedural due process requires that parties whose rights are affected have an opportunity to be heard. *See Berube*, 139 N.H. at 567, 663 A.2d at 601; N.H. CONST. pt. I, art. 15. The right to be heard in custody and visitation cases encompasses "the right to call and cross-examine witnesses, to be informed of all adverse evidence, and to challenge such evidence." *Provencal v. Provencal*, 122 N.H. 793, 797, 451 A.2d 374, 377 (1982), *overruled in part by Ross v. Gadwah*, 131 N.H. 391, 395, 554 A.2d 1284, 1285 (1988); *see Ross*, 131 N.H. at 395, 554 A.2d at 1286. The trial court, however, has wide discretion in matters involving custody and visitation. *Lester v. Lester*, 111 N.H. 117, 119, 277 A.2d 503, 504 (1971). This includes discretion in the conduct of the proceedings. *Cf. Appeal of Morin*, 140 N.H. 515, 518, 669 A.2d 207, 209 (1995). Absent an abuse of discretion, we will not overturn the master's decision. *See Chasan v. Mintz*, 119 N.H. 865, 867, 409 A.2d 787, 788 (1979).

■ Our review indicates that the master's actions did not violate due process. The plaintiff received notice of the time limitations on the hearing in advance and was offered an opportunity to reschedule the hearing if more time was necessary. Moreover, the master provided an opportunity for the plaintiff to testify at the hearing, to bring evidence to the court's attention, and to respond to the defendant's comments.

During the hearing the plaintiff requested that the defendant be called to the stand to answer questions regarding statements she

made at a prior hearing. The master asked the plaintiff which statements he considered significant or objectionable and noted the relevant portions of the transcript. Although the master did not thereafter permit the defendant to be questioned regarding those statements, this decision was reasonably based on the master's determination of the relevance of the testimony to the issues at hand. We cannot say the master erred in concluding that the testimony already received and the transcript of the prior hearing provided sufficient information with which to evaluate the plaintiff's claims.

The plaintiff also alleges bias on the part of the master. He alleges that her disdain for his religion colored her conduct during the hearing and in rendering her decision. During the proceedings, the master remarked to the plaintiff that he should attend a parenting class after telling his son that he believes Halloween is the Devil's holiday. In her recommendation, the master criticized "the way in which Plaintiff has chosen to tell the child the 'truth' about his own religious beliefs."

■ Despite these religious references, our review of the record discloses no bias on the part of the master. The master's comments were not a reaction to the expression or content of the plaintiff's religious beliefs, but rather to the manner in which he chose to impart these beliefs to his child. *See Sanborn v. Sanborn*, 123 N.H. 740, 748, 465 A.2d 888, 893 (1983) (religious beliefs may be considered only as they relate to "the concerns and temporal welfare" of the child); *cf. Provencal*, 122 N.H. at 798-99, 451 A.2d at 378 (concluding that religious references related to "the concerns and temporal welfare" of the child were proper subjects of guardian ad litem's report).

■ The plaintiff next argues that the master failed to make findings consistent with the facts presented and the law of this State. It is not our role to decide visitation matters, "but rather to decide whether the determination made by the trial court can be upheld." *Chasan*, 119 N.H. at 868, 409 A.2d at 788 (quotation omitted). We will not overturn the master's recommendation approved by the court unless "the record clearly demonstrates an abuse of discretion," *id.* at 867, 409 A.2d at 788, or the decree contains an error of law, *see Sanborn*, 123 N.H. at 741, 465 A.2d at 893-94.

The master's decree states that the parties must "follow the terms of outstanding court orders respecting visitation." The plaintiff does not dispute that there was an outstanding stipulation

approved by the court and that the parties' revised visitation arrangement differed from that schedule. He contends, however, that the May 1993 stipulation permitted the parties to modify the visitation provisions in the original agreement and that the defendant should be enjoined from altering the revised schedule to which she agreed.

■ Child custody and visitation orders are not contractual in nature despite the fact that they may incorporate a contractual arrangement between the parties. *See Dupuis v. Click*, 135 N.H. 333, 337-38, 604 A.2d 576, 579 (1992). In visitation matters, the court has continuing jurisdiction to modify arrangements in the best interests of the child. *See McSherry v. McSherry*, 135 N.H. 451, 453, 606 A.2d 311, 313 (1992); *Preston v. Mercieri*, 133 N.H. 36, 46, 573 A.2d 128, 134·(1990). This authority does not preclude the parties from mutually agreeing to informal modifications of court-approved orders. Such revisions are not binding on the court, however, *see* 24 AM. JUR. 2D *Divorce and Separation* § 1016 (1983), and cease to bind the parties absent their mutual assent.

In this case the parties' stipulation anticipated that after the periods of visitation explicitly incorporated in the agreement had been observed, the parties would meet with the guardian ad litem to discuss a future visitation schedule. The stipulation does not permit the parties to make binding revisions to the visitation schedule without court approval. Rather, it contemplates continued court supervision through the involvement of the guardian ad litem and a subsequent hearing to evaluate the success of the visitation arrangements. The court clearly intended to retain jurisdiction and approve future arrangements with regard to the best interests of the child. Moreover, the parties were aware of the procedure to amend the stipulation since they obtained a court-approved modification in July 1993.

■ That a prior agreement of the parties is a consideration in deciding what justice requires in an alimony context, *see Morphy v. Morphy*, 112 N.H. 507, 509, 298 A.2d 580, 581 (1972), does not eliminate the importance of making a determination based upon the welfare of the child in a visitation context. By his request for injunctive relief, the plaintiff sought to increase his periods of visitation without demonstrating changed circumstances and that the best interests of the child warrant a modification in custody. A prior agreement of the parties alone, without a judicial determination that it serves the child's welfare, is insufficient as the basis for a modification of custody or visitation.

■ In addition to restricting the plaintiff's visitation privileges to those approved by the court, the master found that because the manner in which the plaintiff had imparted his religious beliefs to his child undermined the defendant's parental authority as sole legal custodian, the defendant could prohibit the plaintiff from taking the child to religious meetings. In her recommendations on the motion for reconsideration and motion to recuse, the master went further, stating that the plaintiff was not free to share his religious beliefs with his child or indoctrinate the child in his religion if doing so interfered with the defendant's right to determine the child's religious upbringing. This ruling is in error, and we vacate the religious restrictions on the plaintiff's visitation rights.

■ The plaintiff correctly asserts that the natural father of a child born out of wedlock who has acknowledged the child and assumed parental responsibilities has a constitutional right to custody and visitation, see Brauch v. Shaw, 121 N.H. 562, 570, 432 A.2d 1, 5 (1981), which the courts must enforce, see Locke v. Ladd, 119 N.H. 136, 140-41, 399 A.2d 962, 965 (1979). At the same time, the courts' overriding concern in structuring custody and visitation matters is the best interests of the child, Richelson v. Richelson, 130 N.H. 137, 144, 536 A.2d 176, 180-81 (1987), and this consideration may require circumscribing one or both parents' rights to promote the child's welfare, see Stanley D. v. Deborah D., 124 N.H. 138, 142, 467 A.2d 249, 250-51 (1983); Chasan, 119 N.H. at 867, 409 A.2d at 788.

■ In this instance, the court accepted the parties' stipulation that the defendant would have sole physical custody and the plaintiff would have set periods of visitation. In addition, it is undisputed that the defendant has sole legal custody of the child. A legal custodian is entitled to make the major decisions regarding the health, education, and religious upbringing of a child. See 3 C. DOUGLAS & C. DOUGLAS, NEW HAMPSHIRE PRACTICE, FAMILY LAW § 14.07, at 413 (2d ed. 1992). Although some States vest legal custodians with the exclusive right to choose the religion of the child, see, e.g., Andros v. Andros, 396 N.W.2d 917, 924 (Minn. App. 1986); Lange v. Lange, 502 N.W.2d 143, 146 (Wis. App. 1993), cert denied, 511 U.S. 1025 (1994), many States refuse to restrict the visitation rights of non-custodial parents absent a showing of harm to the child from exposure to a different religious environment. See, e.g., In re Marriage of Murga, 163 Cal. Rptr. 79, 81-82 (Ct. App. 1980); Compton v. Gilmore, 560 P.2d 861, 866 (Idaho 1977); Felton v. Felton, 418 N.E.2d 606, 607-08 (Mass. 1981); Hanson v. Hanson, 404

N.W.2d 460, 465 & n.2 (N.D. 1987); *Pater v. Pater*, 588 N.E.2d 794, 801 (Ohio 1992); *Munoz v. Munoz*, 489 P.2d 1133, 1134 (Wash. 1977) (en banc). New Hampshire falls into this latter category. *See Sanborn*, 123 N.H. at 749, 465 A.2d at 894.

In *Sanborn v. Sanborn*, the plaintiff filed a motion to clarify the visitation schedule in a divorce decree, contending that it unconstitutionally established a preference for her defendant ex-husband's religion over her own. *Sanborn*, 123 N.H. at 745, 465 A.2d at 892. We concluded that the decree implicitly advanced a preference for the defendant's religion because it made provision for his religious holidays but not the plaintiff's. *Id.* at 748-49, 465 A.2d at 894. The decree also structured visitation times so that the plaintiff could never attend her own religious services with her children. *Id.* We held such an infringement on the plaintiff's constitutional rights impermissible in the absence of an affirmative showing that the children's attendance at the plaintiff's church services "endangered their physical or temporal welfare." *Id.* at 749, 465 A.2d at 894.

In *Sanborn*, we recognized that courts should not be placed in a position of choosing one religion over another. *See id.* at 747, 465 A.2d at 893. Any state action regarding religion, such as an order on visitation, must satisfy three criteria to be permissible under the Federal. Constitution: (1) it must have a secular purpose; (2) its principal or primary effect must neither advance nor inhibit religion; and (3) it must not foster excessive government entanglement with religion. *Id.* at 748, 465 A.2d at 893.

Accordingly, we seek the path of least intrusion on the religious inclinations of parents that is compatible with their children's welfare. *See Felton*, 418 N.E.2d at 608. We therefore hold that courts cannot enjoin non-custodial parents from exposing their children to their faith during visitation periods absent an affirmative showing of harm to the children from such exposure. *See Sanborn*, 123 N.H. at 749, 465 A.2d at 894; *Felton*, 418 N.E.2d at 610 (restriction of visitation privileges because of religious differences must be based on firm proof of deleterious effect on child). Confusion or disorientation is insufficient, *see Felton*, 418 N.E.2d at 610, as is speculative harm, *Sanborn*, 123 N.H. at 749, 465 A.2d at 894, to justify infringement on the non-custodial parent's constitutional rights. *See Felton*, 418 N.E.2d at 611. Religious restrictions such as those in the master's decree must "be based upon an affirmative and specific finding, supported by substantial evidence, that the [child's] welfare was in fact jeopardized." *Sanborn*, 123 N.H. at 749, 456 A.2d at 894 (emphasis omitted).

Our review reveals that the record lacks evidence the child has been harmed by exposure to the plaintiff's religious beliefs. The defendant testified she was disturbed because her child made statements to her to the effect that "Halloween was the Devil's holiday," "God said Christmas trees are bad," and "Santa Claus isn't real." However, there is no indication that the child, as opposed to the mother, was adversely affected by these statements. The defendant testified that her son was "a little bit put aside by the fact that his father didn't give him a birthday cake," but this hardly justifies the religious restrictions imposed. The record is likewise devoid of indications that the hygienic concerns and behavioral problems the defendant related stemmed from exposure to the plaintiff's religion during periods of visitation. *See* Note, *Religious Visitation Constraints on the Noncustodial Parent: The Need For National Application of a Uniform Compelling Interest Test*, 71 IND. L.J. 815, 820-23 (1996) (discussing necessity of showing causal link between custodial parent's conflicting beliefs and harm to child before placing religious restrictions on visitation).

The master's order was predicated on a finding that the plaintiff was denigrating and disapproving of the defendant's holidays and religious and secular practices. Courts recognize that attempts by one parent to undermine the authority of the other can be harmful to the children involved. *See* 24 AM. JUR. 2D *Divorce and Separation* §§ 1011, 1013 (1983). The facts adduced at the hearing, however, do not support this finding, insofar as religious practices are concerned. The issue extends beyond a pure consideration of religious beliefs. When a non-custodial parent acts in any way that jeopardizes the welfare of the child, the trial court may issue orders in matters of custody and visitation to eliminate the jeopardy.

While the defendant testified that the plaintiff made derogatory comments to the child about her and members of her family, she did not testify that these derogatory statements extended to her religious practices. For his part the plaintiff testified that he talks openly with his son about his religious beliefs and his feelings on the holidays celebrated by the defendant. He insists that he honors the defendant's right to raise the child in her religion by instructing his son that he must observe holidays with his mother. The fact that the plaintiff told the child that Santa and the Easter bunny, secular manifestations of religious holidays, are nonexistent, and that God disapproves of Christmas trees, fails to demonstrate an affirmative design to demean the defendant's rituals in the eyes of their child. In short, it is insufficient to assume harm to the child from what

some might consider to be the plaintiff's inappropriately blunt expressions of his religious beliefs.

In light of the foregoing, the portion of the master's decree returning the visitation schedule to that previously approved by the court is affirmed, while the restrictions on the plaintiff's religious activities with his son during those visitation times are vacated. We remand to the trial court for consideration of the imposition of restrictions in the event the defendant can demonstrate harm to the child as a result of the plaintiff's conduct.

*Affirmed in part; vacated in part; remanded.*

All concurred.