Merrimack
No. 83-428

SUSAN ANDERSEN

v.

CHRIS K. ANDERSEN

November 9, 1984

*Rinden Professional Association,* of Concord (*Paul A. Rinden* on the brief and orally), for the plaintiff.

*McSwiney, Jones & Semple,* of Concord (*Paul C. Semple* and *Elaine L. Clark* on the brief, and *Ms. Clark* orally), for the defendant.

PER CURIAM. In this divorce proceeding the superior court entered a final decree in 1980. The plaintiff subsequently filed a motion to revise the decree with respect to division of property and custody of children. On recommendation of a Master (*Craig Salomon,* Esq.), the Superior Court (*Flynn,* J.) denied the motion. We affirm.

On the record it could be found that during the parties' marriage the plaintiff had assisted the defendant in keeping personal and business records, and that she continued to do so for about a year after they separated. In 1979, the plaintiff decided to leave the defendant for another man, and the parties discussed the terms of a divorce. They agreed in general terms about the division of real and personal property and about the custody of their children.

The parties then jointly consulted with G. Wells Anderson, Esq., who was representing the plaintiff in an unrelated matter at the time. When he learned why the parties had come to see him, Mr. Anderson advised them that he could represent only one party. They agreed that he would represent the plaintiff.

The parties then proceeded to tell Mr. Anderson what they had generally agreed about property and custody, and he prepared a stipulation based on his notes of the discussion. The plaintiff and Mr. Anderson did not thereafter discuss the terms of the stipulation.

The defendant obtained his own lawyer, who modified the proposed stipulation slightly. Mr. Anderson sent the stipulation as modified to the plaintiff, with the request to sign and return it if she found it acceptable. After deleting a proposed waiver of future support, she did sign the stipulation, and it was incorporated by reference in the decree of divorce.

The stipulation called for the subdivision of the parties' real property. It provided that one resulting lot on which their house was located would be sold, with the proceeds to be divided equally after payment of certain liabilities, including those for federal income taxes. The remaining lot would be the property of the defendant alone. After delay and animosity, the first lot was sold, but no net proceeds were realized. The defendant still owned the second lot at the time of the hearing on the plaintiff's motion.

The stipulation also provided that the defendant would have custody of the parties' two children. Although the plaintiff would have rights of visitation, there were no detailed provisions on that subject. After the divorce, the defendant and the children moved to Ohio.

The plaintiff now seeks to reopen the decree that embodied the stipulation. We consider first her prayer to revise the property settlement. In support of this request in the superior court she made a series of claims, only one of which is now before us. She alleged that she agreed to the property settlement only as a result of undue influence exerted on her by her lawyer. The master placed the burden of proving undue influence on the plaintiff and found that she had not carried that burden. He therefore denied the relief requested. On appeal, the plaintiff claims that the master erred in allocating the burden of proof.

■ There is no dispute that the property settlement provided by an approved stipulation in a divorce case may be set aside for "fraud, undue influence, deceit or misrepresentation." *Durkin v. Durkin*, 119 N.H. 41, 42, 397 A.2d 304, 304 (1979). The plaintiff seeks to modify this basic rule, however, by grafting onto it a provision for shifting the burden of proof from a plaintiff who alleges undue influence to the defendant who claims there was none. The plaintiff argues that after she had proven "(1) a relationship of trust with her attorney, (2) breach of that trust, and (3) a resulting stipulation which failed to fulfill the plaintiff's intentions . . .", the master erred in failing to rule that the defendant had the burden to prove that the settlement had not resulted from undue influence.

The plaintiff's argument lacks support, however, either in the prior law of this court or in the facts of this case. The only prior New Hampshire law that she cites in support of a rule shifting the burden of proof is *Edgerly v. Edgerly*, 73 N.H. 407, 62 A. 716 (1905). There we held that on a record of evidence from which undue influence on a testatrix could be inferred, it was error to direct a verdict upholding her will solely on the basis of the usual presumption of validity. The only language about burdens of proof was in the context of a motion for directed verdict, not applicable here. The case is not on point.

We note further that the facts as found by the master would not support the plaintiff, even if we accepted her legal position. On the plaintiff's theory, the burden of proof would not shift unless the court should find a breach of trust and a resulting stipulation that failed to fulfill her intentions. On those issues, the master found that the plaintiff "was competently represented, to the extent that she requested or appeared in need of representation, by Attorney G. Wells Anderson." He found that she knew or was in a position to know the extent of the tax liens and the value placed on the real estate. He viewed the property settlement in the light of his finding that "the divorce resulted from the plaintiff's desire to extricate herself from the marriage, [from] her frustration with her role as a

mother to her children, and [from] a romantic involvement" with another man.

In these circumstances the master found that the elements of the property settlement favorable to the defendant were fair in the light of his sole responsibility for raising and educating the children. In essence the master found that the property settlement reflected the plaintiff's principal desire to be free of her marriage as promptly as possible. Conversely, he made no finding that the stipulation failed to fulfill her intentions. There is no question that the record contains evidentiary bases for these findings.

In summary, we conclude that the master's treatment of the burden of proof on the issue of undue influence was consistent with prior law in this jurisdiction. We see no basis to disturb the master's conclusions that the plaintiff proved neither breach of trust nor failure of the property settlement to effectuate her intentions.

We now consider the plaintiff's claim that the master erred in responding to her requests to revise the decree as it related to the custody of the children. The plaintiff sought detailed orders about visitation and an award of joint legal, as distinguished from physical, custody. The master recommended that the order on visitation be revised to include the detailed provisions, but he recommended against the award of joint legal custody.

The plaintiff argues that the master wrongly applied the standard of *Perreault v. Cook,* 114 N.H. 440, 322 A.2d 610 (1974) in denying her joint legal custody. Under *Perreault,* an award of physical custody "should not be disturbed unless the moving party demonstrates that the circumstances affecting the welfare of the child have been so greatly altered that there is a strong possibility the child will be harmed if he continues to live under the . . . arrangement . . . [previously ordered]." *Id.* at 443, 322 A.2d at 612. In *Sanborn v. Sanborn,* 123 N.H. 740, 465 A.2d 888 (1983), however, we held that the *Perreault* standard did not apply to a request to modify a custody order only to the extent of granting joint legal custody to the parties, without disturbing the existing physical custody award. We held that the best interest test should be applied in such a case.

We agree with the plaintiff that in the present case the master probably applied the *Perreault* standard, for he wrote that the plaintiff had failed to meet her burden to show that the existing arrangement "is or may become detrimental to the children's well-being," so as to justify a change. Nonetheless, we do not believe that it would be appropriate to reverse the judgment, for the master's other findings clearly indicate that joint legal custody would not be in the children's best interest in this case.

The master found that the plaintiff had bitter feelings about the defendant and that there was generally such animosity among the parties as to require detailed visitation orders. The master was therefore warranted in concluding as he did that joint legal custody was not "viable." It would not be realistic to expect parents in such circumstances to act as equal partners in raising the children. *See* C. DOUGLAS, 3 NEW HAMPSHIRE PRACTICE, FAMILY LAW § 261 (1982). The record warranted the master's decision to go no further than to provide a sharing of the information contained in health and school records.

*Affirmed.*