Grafton
No. 89-227

ELLEN KNUDSON WEBB

v.

ROLF O. KNUDSON

November 9, 1990

*McSwiney, Jones, Semple, Bowers & Wise P.C.*, of New London (*Robert E. Bowers, Jr.*, on the brief and orally), for the plaintiff.

*Nutter, McClennen & Fish*, of Boston, Massachusetts (*Charles R. Parrott* and *Natalie A. Kanellis* on the brief, and *Mr. Parrott* orally), for the defendant.

*Boyle Law Office P.C.*, of Plymouth, for the guardian ad litem, Gerard J. Boyle, joined in the brief of the defendant.

BROCK, C.J.    The plaintiff, Ellen Knudson Webb, filed a petition in superior court seeking modification of a permanent custody decree which, pursuant to stipulations entered into in the divorce between the parties, awarded sole legal custody and primary physical

custody of the parties' two minor children to their father, the defendant, Rolf O. Knudson. The defendant appeals from an order of the Superior Court (*Smith, J.*) granting joint legal custody of the children to both parents and transferring primary physical custody of the children to their mother. Arguing that there was insufficient evidence of a significant change of circumstances to justify a transfer of custody in the best interests of the children, the defendant asserts that the trial court erred in failing to apply correctly the standard required by *Perreault v. Cook*, 114 N.H. 440, 322 A.2d 610 (1974) for the modification of a child custody decree. We reverse.

The parties in this action were married on April 29, 1972, and are the parents of two children, Tellman (nicknamed "Telly") born in 1977 and Sarah born in 1980. The parties' marriage, if not idyllic, was relatively tranquil until March 26, 1986, when the plaintiff informed the defendant that she was in love with another man, and wished to be divorced. Following this announcement, the plaintiff left the marital home and commenced an action against the defendant for divorce.

To insure that Telly and Sarah would be properly fed while in their father's care, the plaintiff hired Kristine Wheeler as a part-time housekeeper to prepare the children's evening meal. Subsequently, on August 4, 1986, the parties entered into a written stipulation agreeing to a judgment of divorce which, in part, awarded the defendant sole legal custody and primary physical custody of the children and specified the plaintiff's visitation rights. The court approved the permanent stipulation, and the parties were divorced on September 18, 1986.

Once divorced, the plaintiff married Rodney Webb, a man she claimed was her husband in a former life. Telly and Sarah continued to live with their father and were cared for on a full-time basis by Kristine Wheeler, who eventually married the defendant and moved into his home with her own two minor children from a previous marriage. During the hearings on this matter, all parties agreed that Kristine was a "good" and "nurturing" stepmother. Moreover, Telly and Sarah integrated extremely well with Kristine's children; the two sets of children live happily together, expressing considerable love for one another, and sadness when confronted with the possibility of separation.

Although the marriage between the parties was dissolved in an uncontested proceeding, they have engaged in acrimonious litigation ever since, premised upon the defendant's alleged obstruction of the plaintiff's visitation rights. The record indicates that in the fall of

1986, shortly after his parents were divorced, Telly began to experience difficulty around the time of visitation, expressing a fear of mistreatment by his mother. In explanation of his fear, Telly revealed to his father that the plaintiff had employed excessive corporal punishment in disciplining him. The plaintiff corroborated Telly's description of the discipline, acknowledging at trial that she had, prior to the divorce, "overreacted" in her use of corporal punishment and had hit Telly hard enough to cause bruising.

Concerned by Telly's "night terrors" and severe anxiety regarding visitation, the defendant contacted Dr. Joseph B.E. Nadeau, the first of many psychologists involved in this case. Dr. Nadeau began therapy with Telly in December of 1986 for the purpose of reestablishing meaningful contact with his mother. However, given the level of Telly's distress regarding prior incidents of discipline, the doctor suspected abuse and notified the State Division for Children and Youth Services (DCYS). Meanwhile, in February of 1987, following an incident of discipline by his stepfather, Telly refused any further visitation with his mother.

It was against this background that the DCYS conducted an investigation and issued a report which concluded that there had been no abuse. On the other hand, the report indicated that there was "certainly evidence of inappropriate parenting" by the mother. Observing that "[t]he Knudson children have clearly aligned themselves with the custodial parent," the report characterized the Knudson household as "a supportive and nurturing environment within their home community." Of greater significance was a recommendation regarding the children's placement with their father, which stated that "[a]ny changes in this consistent environment should be made only for the most compelling reasons."

On March 11, 1987, the plaintiff filed a petition to bring forward and modify, seeking primary physical custody of the children. A guardian ad litem was appointed on April 19, 1987, and he, in turn, retained Dr. Vincent Scalese, the second psychologist involved in this case. Dr. Scalese examined both children and provided the court with a report containing information and recommendations intended to facilitate decisions about visitation between Telly and his mother.

Noting first that Telly's level of distress was "sufficient as to make immediate and mandatory visits unadvisable," the report further recommended that a "state certified . . . psychologist should be employed to conduct individual therapy with each of the parents and Telly," with the therapeutic goal of "reconciling the visitation be-

tween Telly and his mother." Dr. Scalese's final recommendation, embodied in a court order of July 24, 1987, directed that if "in the opinion of the psychologist doing the therapy or the Guardian Ad Litem, any of the parties involved place Telly in danger or undermine the plan, that party should be restricted from contact with Telly. . . ."

In compliance with the court order of July 24, 1987, a third psychologist, Dr. George Sansone, was promptly hired by the guardian ad litem, and the court-ordered therapy was scheduled to commence on September 2, 1987. However, the children's mother cancelled that appointment, postponing the first meeting until September 10, 1987. Complicating matters even further, a custody hearing was held on September 9, 1987, one day before the scheduled therapy was to begin.

The only witness permitted to testify at the September 9th hearing was Dr. Scalese, who had recommended the court-ordered process of therapy. Based upon a single conversation that he had with the guardian ad litem immediately prior to the hearing, Dr. Scalese testified that he learned that the therapy agreed to was not engaged in. In his opinion, the defendant had "reneged" upon his agreement to cooperate with therapy, and consequently, a "full change [of custody] would be . . . appropriate right away." On September 9, 1987, the court entered a temporary order changing physical custody of Telly and Sarah to their mother.

Accordingly, Sarah began to live with her mother, and a short while later, they moved to Vermont. Telly, on the other hand, was sufficiently adamant in his refusal to leave home that the guardian ad litem decided to allow him to stay. Thus, a split custody arrangement resulted, with each parent retaining custody of one child. Counseling commenced with Dr. Sansone, who conducted therapy for several months with both parties and both children in an attempt to reduce the family's disharmony. Subsequently, on December 17, 1987, a meeting was held to discuss what progress had been made in therapy. Following a recommendation by Dr. Sansone that custody be returned to the father, the plaintiff discontinued Sarah's therapy.

At the trial on the merits of the plaintiff's petition for modification, Dr. Sansone testified that Sarah was living in danger and suffering from "emotional abuse" by her mother. According to his testimony, Sarah was afraid of her mother and described her mother as prone to "fits" in which she screamed and yelled. Of these "fits," the most alarming to the doctor was a picture-burning incident in which the plaintiff smashed the glass on a large framed watercolor, and pro-

ceeded, in Sarah's presence, to tear and burn the painting, lighting it on fire over the kitchen sink. At trial, the plaintiff corroborated Sarah's description of the incident, explaining that the painting was a gift from a deceased grandmother, with whom she had grown angry. Although the plaintiff dismissed the importance of the incident by stating that "I'm human and I am subject to stress," Dr. Sansone characterized the event as "horribly traumatic" to the seven-year-old child, noting that Sarah has been troubled by nightmares involving the incident.

The guardian ad litem testified at trial that he had spent several hundred hours performing his own investigation in this case. He agreed with Dr. Sansone that Sarah had suffered emotionally from her temporary placement with the plaintiff, and recommended that "custody . . . should remain as it was . . . that is, that primary physical placement of the children should be with Rolf Knudson and there should be liberal visitation with Ellen Webb." Although the guardian insisted that the defendant was "the better of the two custodial parents," he nonetheless characterized the defendant as "consumed by this case" and "willing to do whatever it takes to make sure his children are protected." Recalling that the defendant had, on one occasion, dropped to his knees in the guardian's office and begged him to "please do something to get my kids back together," the guardian ad litem testified that the defendant's behavior had at times been "inappropriate."

Regarding the animosity that exists between the parties, the guardian testified that the defendant has engaged in behavior bound to rankle the plaintiff. For example, in an effort to show the plaintiff's "irrational behavior," the defendant videotaped the plaintiff in the spring of 1987, as she knocked on his door and attempted to pick up the children for visitation. The guardian ad litem testified to being "infuriated" by the video. He described the defendant's action in taking the video and not having the children ready for visitation at the appointed hour as "not only irrational, but unlawful." The guardian ad litem also corroborated the opinions of Doctors Nadeau and Scalese that the defendant was partially at fault for the children's apprehension toward their mother.

Eight days of hearing were held on the merits of the plaintiff's petition for modification, ending in October, 1988. Thereafter, on March 4, 1989, Sarah refused, after a weekend visit, to return to her mother's home, and sought to remain permanently with her father. The guardian ad litem supported Sarah's decision, and she has since

lived in the Knudson home with her father, brother, stepmother, and stepmother's children.

On March 7, 1989, the trial court entered a final order modifying the original award of custody by granting joint legal custody of the children to both parties and primary physical custody of the children to the plaintiff. The trial court denied the defendant's motion for reconsideration but granted, after two days of hearings, the defendant's motion for a stay of its order pending this appeal.

On appeal, the defendant argues that the trial court erred in failing to apply the standard of *Perreault v. Cook*, 114 N.H. 440, 322 A.2d 610, governing modification of an award of custody. Claiming that there is no evidence that Telly and Sarah are in any way endangered by their present custodial arrangement, the defendant argues that the evidence produced at trial fails to demonstrate changed circumstances of a sufficient magnitude to satisfy the standard of *Perreault v. Cook*. Accordingly, the defendant contends that the trial court abused its discretion in awarding custody to the plaintiff. The defendant also argues that the Superior Court (*Morrill*, J.) abused its discretion in denying his motion to reconsider, but in light of our resolution of the *Perreault* issue, we need not consider this argument.

■■ Although an award of custody is always subject to modification, the law in this State is clear: a child custody decree should not be disturbed "unless the moving party demonstrates that the circumstances affecting the welfare of the child have been so greatly altered that there is a strong possibility the child will be harmed if he continues to live under the present arrangement." *Perreault v. Cook*, 114 N.H. at 443, 322 A.2d at 612. The *Perreault* standard recognizes a child's psychological need for continuity and stability in family relationships. Altered circumstances are therefore a *sine qua non* of a change in parental custody in New Hampshire, and the legally dispositive issue is whether changed circumstances jeopardize the child's well-being. *Id.* Consequently, the focus of the inquiry is upon the circumstances of the party to whom custody of the child has been given by the original decree. *Id.* at 443–44, 312 A.2d at 612.

■■ The trial court's determination in any custody case depends to a large extent upon a firsthand assessment of the credibility of witnesses, as well as the character and temperament of the parents, and the findings of the trial court are binding upon this court if supported by the evidence. *Ballou v. Ballou*, 118 N.H. 463, 465–66, 387 A.2d 1169, 1170 (1978). Significantly, however, the discretion of

the trial court in determining whether there should be modification is more limited than in an initial custody determination, where the court is called upon to consider the relative abilities of both parents to promote the welfare of the child, and where the court must choose, initially, between differing factual assessments as to the child's best interests. *See Del Pozzo v. Del Pozzo*, 113 N.H. 436, 436–37, 309 A.2d 151, 152–53 (1973) (paramount and controlling consideration in initial determination of custody is the overall welfare of the child). Although the findings of the trial court are generally to be accorded great deference, the discretion of the trial court is not absolute and may be set aside where it lacks a sound and substantial basis in the record. *See Rousseau v. Rousseau*, 116 N.H. 106, 108, 352 A.2d 706, 708 (1976). After an exhaustive review of the record, we disagree with the trial court and conclude that the quality of the custodial home environment or the guidance of the custodial parent has not changed in any significant way.

Although the trial court made findings that the father has exerted pressure on the children to take his side in this custody battle, and has attempted to alienate the children's natural affection for their mother, the trial court chose to ignore key, uncontroverted evidence regarding the mother's volatile conduct and displays of temper, which, over the years, have been a source of deep emotional upset to the children and, at least in the case of Telly, have led to emotional estrangement from the mother. Moreover, it is apparent from the record that the validity and depth of the children's preferences to live with their father is commensurate with the stable, prosperous, harmonious, and happy custodial arrangements he provides for them. Nowhere in the trial court's findings is there any recognition of this key fact.

■■ We are mindful that the record contains evidence that the father has, on at least one occasion, unjustifiably, unreasonably, and intentionally interfered with the plaintiff's rights to meaningful visitation. Although we find such behavior despicable, this is not a proceeding to discipline the defendant for his misdeeds or shortcomings. Children are not chargeable with the misconduct of their parents and should not be uprooted from their home in order to discipline a recalcitrant parent. Indeed, "[t]he award of custody is not a device to reward or punish parents, and a violation of a court decree by one of the parties is not necessarily controlling on the question of custody." *Houde v. Beckmeyer*, 116 N.H. 719, 721, 366 A.2d 504, 506 (1976). Thus, while we do not condone the behavior of the father, an award of

custody must ultimately be based upon the best interests of the child, and may not be sustained as a means of enforcing the visitation rights of the noncustodial parent. Rather, the contempt powers of the court may be exercised to that end. *Id.*

We recognize, nonetheless, that the obstruction by a custodial parent of visitation between a child and the noncustodial parent may, if continuous, constitute behavior so inconsistent with the best interests of the child as to raise a strong possibility that the child will be harmed. Aside from one isolated incident, nothing in the record indicates that the defendant has engaged in a course of conduct designed to interfere with the plaintiff's visitation rights. To the contrary, it is plain from the record that the defendant has encouraged Telly and Sarah to visit their mother and has cooperated with the psychologists involved in this case in effectuating the court-ordered process of therapy and plan of visitation.

■ The plaintiff argues that the custody modification standard enunciated in *Perreault v. Cook* ought not to apply here because the custody decree was the result of the parties' stipulation and was not a result of a "full hearing on the merits." She relies upon *Greenglass v. Greenglass*, 118 N.H. 570, 391 A.2d 890 (1978), in which this court held that the *Perreault* standard does not apply when a parent seeks to modify a temporary custody decree. *Id.* Her argument is misplaced. She seeks to modify a permanent, not a temporary, decree. As such, *Perreault* is the controlling authority.

■■ In *Perreault v. Cook*, we explained our reluctance to modify existing custody decrees, noting that "[t]he shuffling of a child back and forth between a father and mother can destroy his sense of security, confuse his emotions, and greatly disrupt his growth as an individual." *Perreault v. Cook*, 114 N.H. at 443, 322 A.2d at 612. Accordingly, "[f]amily relationships established under an existing order should not be disrupted in the absence of a 'strong possibility' of harm if continued." *Hille v. Hille*, 116 N.H. 109, 111, 352 A.2d 703, 705 (1976) (quoting *Perreault v. Cook supra*). Glaringly absent from the record in this case is any evidence of a relevant change in circumstances inimical to the welfare of the children and warranting their removal from the stable and loving home environment provided by their father and stepmother, Kristine Knudson. Sadly, however, this custody battle has dragged on for years, at the children's expense. Although we recognize that questions of custody are primarily problems for the trial court, we hold that the trial court's determination

in this case does not conform to the evidence of record and represents an improvident exercise of discretion which must be set aside.

*Reversed.*

HORTON, J., did not sit; the others concurred.