Hillsborough-southern judicial district
No. 2000-276

## IN THE MATTER OF JAMES B. PASQUALE AND ANN MARIE (PASQUALE) PAULSON

July 23, 2001

*Follender Law Offices, P.L.L.C.*, of Nashua (*Richard C. Follender* on the brief and orally), for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*L. Jonathan Ross* and *Doreen F. Connor* on the brief, and *Ms. Connor* orally), for the defendant.

NADEAU, J. The defendant, Ann Marie (Pasquale) Paulson, appeals (1) an order of the Superior Court (*Hollman*, J.) approving the recommendation of the Marital Master (*Alice S. Love*, Esq.) modifying the custody of the parties' minor children in favor of the plaintiff, James B. Pasquale, and (2) an order of the Superior Court (*Brennan*, J.) approving the master's recommendation to deny the defendant's and the guardian ad litem's motions for reconsideration of the custody order. We affirm.

The following facts were either found by the marital master or appear in the record. The parties were divorced on February 4, 1997. They have two sons, Nicholas, born on December 22, 1990, and Nathan, born on March 19, 1993. The parties were originally awarded, in accordance with their stipulation, joint legal and physical custody of the boys, with physical custody shared on an alternating weekly basis. During the three years prior to this custody dispute, teachers and daycare providers repeatedly notified the parties of behavioral problems they observed in Nathan. On May 5, 1999, Nathan was diagnosed, at least initially, as having attention deficit hyperactivity disorder (ADHD).

On April 15, 1999, the defendant filed a petition to modify custody, alleging, among other things, that the plaintiff "has resisted, if not refused, to acknowledge that [Nathan] has special needs, requiring appropriate care, attention and services," and that "Nathan's

special behavioral needs are not met under the current custodial arrangement, and he suffers as a result." She also alleged that "inappropriate burdens are imposed upon [Nicholas]" under the joint custodial arrangement. The defendant requested that she be awarded primary physical custody of both boys. The plaintiff objected and cross-petitioned for sole physical custody of both boys.

A guardian ad litem was appointed. She recommended that the defendant be granted sole legal custody of both children and that the matter be reviewed in six months to determine if physical custody should be modified. The trial court, however, approved the master's recommendation that the plaintiff be granted physical custody of the boys, and that the defendant have visitation rights and limited legal custody, subject to the plaintiff's "ultimate responsibility of decision-making" should the parties be unable to agree on important issues affecting the boys.

■ A marital master has wide discretion in custody matters. *See Matthews v. Matthews*, 142 N.H. 733, 735 (1998). Accordingly, we will uphold a master's determination if it could reasonably be reached and we accept the master's factual findings unless the evidence does not support them. *See id.* We will, however, reverse a master's order modifying custody "where it lacks a sound and substantial basis in the record." *Id.* (quotation omitted).

The defendant argues that the trial court erred in modifying custody of the boys where the plaintiff failed to show altered circumstances as required for modification of physical custody under *Perrault v. Cook*, 114 N.H. 440 (1974). In *Perrault*, we established the following standard for modification of physical custody in recognition of "a child's psychological need for continuity and stability in family relationships." *Webb v. Knudson*, 133 N.H. 665, 671 (1990).

> The relationship established by the custody award should not be disturbed unless the moving party demonstrates that the circumstances affecting the welfare of the child have been so greatly altered that there is a strong possibility the child will be harmed if he continues to live under the present arrangement.

*Perrault*, 114 N.H. at 443.

The occasion to employ the *Perrault* standard usually arises when one parent seeks to obtain physical custody of a child from the other

parent. *See, e.g., Matthews,* 142 N.H. at 734; *Rousseau v. Rousseau,* 116 N.H. 106, 106-07 (1976). In this case, however, the original custody was joint, and both parents, in seeking a modification to sole custody, acknowledged that the joint custodial arrangement was not working. In fact, the master found that "[t]he one thing upon which the parties agree is that custody must be placed with just one parent."

The defendant argues, citing *Butterick v. Butterick,* 127 N.H. 731, 734 (1986), that private agreements between the parties are not controlling in family law matters. We find *Butterick* inapposite. *Butterick* held that an agreement in a divorce decree to apply a different legal standard than *Perrault* to future custody modifications "should be given no effect by the superior court." *Butterick,* 127 N.H. at 734. Here the "agreement" is the *factual* assessment by both parties that the joint custodial arrangement was not working. We see no reason to prohibit the master from considering the parties' apparent concurrence on a factual matter. *Cf. Parkhurst v. Gibson (Parkhurst),* 133 N.H. 57, 60 (1990) (affirming property settlement and alimony award in divorce action in which the parties' attorneys signed an agreed statement of facts).

We hold that in these circumstances, where the parties agree that joint custody is no longer workable, the *Perrault* standard does not apply. Rather, the master should employ the best-interests-of-the-child standard according to the guidelines we announced in *Del Pozzo v. Del Pozzo,* 113 N.H. 436, 436-37 (1973), to determine which parent should be awarded physical custody. Thus, the master is placed in essentially the same position as if making an initial custody award, "where the court is called upon to consider the relative abilities of both parents to promote the welfare of the child, and where the court must choose, initially, between differing factual assessments as to the child's best interests." *Webb,* 133 N.H. at 672.

The master applied this standard and found:

> Neither parent is unfit and, in fact, both are very capable and loving parents. Neither parent is unable to provide the day to day care that the children require. However, mother finds the day to day care of the children stressful and sees medical intervention as the solution. Father does not find the day to day care of the children stressful and resists medical attention.

■ The record supports these findings. The plaintiff testified that the defendant "had very little patience handling the boys, especially when she was by herself after [they] were split up," and that she called him on many occasions "complain[ing] that she was stressed out." He also testified that she "gets pretty excitable with the boys when they misbehave." The guardian ad litem's report quotes a witness who both taught and babysat the boys who stated that while the boys "have a loving relationship with both parents[,] Dad seems to have better parenting skills. I've seen her 'lose it on them.'" (Quotation omitted.) In addition, the defendant testified that during her marriage to the plaintiff, she had periodically sought counseling because she felt "a bit overwhelmed" by caring for the children alone. The master could reasonably have concluded that because of the defendant's difficulty in dealing with the boys' misbehavior, an award of physical custody of the boys to the plaintiff would be in their best interests.

■ We also find no error in the master's modification of legal custody, which is also subject to the best-interests-of-the-child standard. *See In the Matter of Hunt*, 146 N.H. 65, 66 (2001). We recognize that there are "times when, despite the fitness of each parent, a division of authority would not be in the best interest of the children, the paramount concern." *Wonser v. Wonser*, 120 N.H. 436, 437 (1980). Given the ample evidence of the parties' inability to agree on fundamental issues involving their children, the master could reasonably decide that joint legal custody was no longer workable and was not in the children's best interest. *See Anderson v. Anderson*, 125 N.H. 686, 689-90 (1984). We also conclude that it was not unreasonable for the master to award legal custody to the same parent who was to have physical custody. *See Wonser*, 120 N.H. at 437-38.

The defendant nevertheless argues that the award of custody to the plaintiff lacked a sound and substantial basis in the record because the plaintiff refused to acknowledge a diagnosis of ADHD, although it was established by uncontradicted medical testimony, and refused to treat Nathan for the disorder. The defendant argues that the plaintiff, as a lay witness, was not competent to testify about a medical diagnosis such as ADHD. *See State v. Martin*, 142 N.H. 63, 65 (1997). She also argues that although the master was free to ignore the uncontradicted medical testimony that Nathan has ADHD, she was required to state her reasons for doing so. *See Town of Hudson v. Wynott*, 128 N.H. 478, 484-85 (1986).

The master was not required to resolve whether or not Nathan has ADHD and did not purport to do so. Rather, the master was required to determine, on the evidence before her, the physical and legal custody arrangement that would be in the best interests of the children. The master correctly ruled that the plaintiff was competent to testify about his own concerns regarding Nathan being diagnosed with ADHD and about how he would want to treat Nathan for that disorder. The master was also free to believe the plaintiff's testimony that he did not oppose a diagnosis of ADHD or deny that Nathan has it, but felt that Nathan had not yet been fairly evaluated. The master could also credit the plaintiff's testimony that while he would prefer counseling as an initial course of treatment, he would treat Nathan with medication if his doctor said he needed it.

We acknowledge that the guardian ad litem reached the contrary conclusion that "this is a case about a father who simply cannot acknowledge the fact that his young son suffers from ADHD" and recommended that sole legal custody of both children be granted to the defendant. "[T]he guardian ad litem's report [, however,] is not binding on the judge or master because the difficult decision regarding custody must be made on the basis of *all the evidence*." *Richelson v. Richelson*, 130 N.H. 137, 143 (1987) (quotation omitted). Thus, conflicts in testimony, issues of credibility of witnesses and determinations as to the weight of the testimony are matters for the master to resolve, and the guardian ad litem's recommendations carry no more presumptive weight than any other evidence. *See id.*

Finally, the defendant argues that even if this court were to find a sound and substantial basis in the record for modifying the custody of Nathan, no such basis existed with respect to his older brother, Nicholas. Having found the *Perrault* standard inapplicable to this case, however, we reject this argument. Both parties moved for modification of custody of Nathan and Nicholas, acknowledging that joint custody was unworkable for both boys.

*Affirmed.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.