Salem Family Division
No. 2004-113

IN THE MATTER OF ROBERTA L. KOSEK AND MICHAEL J. KOSEK

Argued: November 9, 2004
Opinion Issued: February 22, 2005

*Howie Law Office, PLLC*, of Salem (*Jocelyn Thomsen* on the brief, and *Mary M. Howie* orally), for the petitioner.

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for the respondent.

DALIANIS, J. The petitioner, Roberta L. Kosek, appeals from an order of the Salem Family Division (*Sadler*, J.) granting a motion for contempt brought by the respondent, Michael J. Kosek. The petitioner argues that the trial court erred by entering a contempt sanction that modified the parties' visitation schedule without making an explicit finding that the modification was in the best interests of the children. The petitioner also argues that the sanction was not proper for a finding of civil contempt, and that the sanction violated her right to due process of law. We affirm.

The relevant facts follow. The parties were divorced by decree dated July 18, 2001. They share joint legal custody of their two daughters, while the petitioner has primary physical custody. The respondent has residual custodial time (also referred to as "visitation") with the children every other weekend, alternate Monday evenings, and various holidays.

The petitioner filed a petition to modify the divorce decree and for contempt on January 31, 2002. The respondent filed a counterclaim. The Trial Court (*Taube*, J.) issued an order on August 22, 2003, which stated: "Petitioner shall not schedule any activities for either child during Respondent's custodial periods unless [R]espondent agrees in writing in advance."

On September 7, 2003, the petitioner sent an e-mail message to the respondent regarding enrolling the children in religious education classes. The classes for one child's age group were scheduled on certain Monday nights from September to March. In her e-mail, the petitioner indicated that she had not yet enrolled the children because she did not want to be found in contempt for scheduling activities during the respondent's visitation period. The respondent replied to the petitioner's e-mail later that day, and said, "I have no problem with [the daughter] taking classrooms [*sic*] as long as the days do not fall onto my scheduled visitations Mondays [*sic*] . . . ." The petitioner enrolled both children in religious education classes the next day, September 8, 2003.

On September 19, 2003, the respondent filed an *ex parte* motion for contempt alleging that the petitioner violated a court order by enrolling the daughter in a religious education class during his custodial time. The respondent requested that the court award him additional custodial time with both daughters.

After a hearing, which, by agreement of the parties, proceeded by offer of proof, the trial court found the petitioner in contempt of the August 22, 2003 order. The trial court ordered: "Because of the contempt, [the respondent] is awarded additional visitation time with the girls." The court awarded visits between 3:30 p.m. and 8:30 p.m. on non-custodial Sundays. The petitioner's motion for reconsideration was denied. The petitioner does not appeal the merits of the contempt finding; she appeals only the sanction.

■ The petitioner first argues that the trial court erred by modifying the visitation schedule without making an explicit finding that the modification was in the best interests of the children. The trial court has wide discretion in matters involving custody and visitation. *Chandler v. Bishop*, 142 N.H. 404, 409 (1997). We review the trial court's modification of the visitation schedule for an unsustainable exercise of discretion. *See Richelson v. Richelson*, 130 N.H. 137, 144 (1987); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

The court's overriding concern in structuring custody and visitation matters is the best interests of the child. *Chandler*, 142 N.H. at 412. In its order, the trial court did not make an explicit finding that altering the visitation schedule was in the best interest of the children. However, the petitioner offered no evidence and made no allegation that a change in the visitation schedule was not in the best interests of the children.

We must assume that the trial court made subsidiary findings necessary to support its general ruling. *Beaudoin v. Beaudoin*, 118 N.H. 325, 328 (1978). In the absence of an explicit finding that the change in visitation was in the best interests of the children, and in the absence of any evidence or allegation to the contrary, we will assume that the trial court found that the altered visitation schedule was not contrary to the best interests of the children. Therefore, the contempt sanction awarding additional visitation time to the respondent was not an unsustainable exercise of discretion by the trial court.

In so holding, we are not ignoring the best interests of the children as suggested by the dissent. We think that where the petitioner does not argue that the sanction is *not* in the best interests of the children, and the sanction only alters visitation time between two parents who share *legal custody*, a specifically articulated finding of the best interests of the children is unnecessary.

Unlike the dissent, we do see a meaningful difference between awards of custody and awards of visitation. As we have noted in the past, granting visitation is a far lesser intrusion, or assertion of control, than is an award of custody. *See Roberts v. Ward*, 126 N.H. 388, 393 (1985); *In the Matter of Nelson & Horsley*, 149 N.H. 545, 548 (2003).

And although we have sometimes uttered the words custody and visitation in the same breath, *see, e.g., Preston v. Mercieri*, 133 N.H. 36, 42 (1990); *Chasan v. Mintz*, 119 N.H. 865, 867 (1979); *Chandler*, 142 N.H. at 409, it is clear that different standards are applied when a parent seeks an award of custody, a modification of a permanent custody decree and a modification of a visitation schedule. *See Webb v. Knudson*, 133 N.H. 665, 671-72 (1990); *Nelson*, 149 N.H. at 548; *In the Matter of Pasquale and Paulson*, 146 N.H. 652, 655 (2001).

In making an initial custody award, the court is called upon to consider the relative abilities of both parents to promote the welfare of the child; the court must choose between differing factual assessments as to the child's best interests. *Pasquale*, 146 N.H. at 655. In *Nelson*, a custody

award case, we rejected the petitioner's theory that he was entitled to custody so long as it was in the best interests of the children. *Nelson,* 149 N.H. at 548 (noting that *Preston v. Mercieri,* 133 N.H. 36, was inapplicable to the custody award case before the court as it dealt with visitation).

The trial court has less discretion in determining whether there should be a modification of a permanent custody decree. *Webb,* 133 N.H. at 671. In *Webb,* where the petitioner sought modification of a permanent custody decree, we cited *Perreault v. Cook,* 114 N.H. 440, 443 (1974), for the proposition that a child custody decree should not be disturbed unless the moving party demonstrates that the circumstances affecting the welfare of the child have been *so greatly altered* that there is a strong possibility the child will be harmed if he continues to live under the present arrangement. *Id.* at 671.

■ And, in visitation matters the court has continuing jurisdiction to modify arrangements in the best interest of the child. *Chandler,* 142 N.H. at 411. We have consistently treated these three areas—custody, modification of custody, visitation—differently, and we see no reason not to continue to treat them differently. We will not base our decision in *visitation* matters upon precedent defined by *custodial* disputes.

Finally, the dissent's reliance upon *Webb* is misplaced. *Webb,* despite its continued references to an "award of custody" cited by the dissent, really addressed a petition for a modification of a permanent custody decree, and hence the court applied the *Perreault* standard. *Webb,* 133 N.H. at 673. One of the bases upon which the petitioner rested her claim was that the respondent had interfered with her visitation rights. The court found the respondent's interference with the petitioner's visitation rights despicable, yet held that it would not grant the petitioner permanent physical and legal custody of the children to punish the respondent, where the petitioner failed otherwise to meet the *Perreault* standard. *Id.* at 672-73.

We next address the petitioner's argument that the contempt sanction issued was not commensurate with a finding of civil contempt, but was in fact a criminal penalty. The petitioner argues that a penalty for criminal contempt cannot be imposed without the requisite constitutional safeguards, which were absent from the September hearing.

■■ Contempt is an offense at common law—a specific and substantive offense that is separate and distinct from the matter in litigation out of which the contempt arose. *Town of Nottingham v. Cedar Waters, Inc.,* 118 N.H. 282, 285 (1978). The power of contempt to enforce previous orders of a court of general jurisdiction is extensive but the exercise of the power

involves practicalities as well as principles. *Douglas v. Douglas*, 109 N.H. 41, 43-44 (1968).

■■ The difference between civil and criminal contempt is the character of the punishment. *Town of Epping v. Harvey*, 129 N.H. 688, 691 (1987). In civil contempt, the punishment is remedial, coercive, and for the benefit of the complainant. Civil contempt proceedings may result in money fines payable to the complainant or in an indeterminate jail sentence until the contemnor complies with the court order. The purpose of prosecution for criminal contempt is to protect the authority and vindicate the dignity of the court. *Town of Nottingham*, 118 N.H. at 285. The criminal contempt defendant, unlike the civil contempt defendant, may be imprisoned for a determinate amount of time without the ability to purge the sentence. *State v. Wallace*, 136 N.H. 267, 270 (1992).

The petitioner argues that since she does not "hold the keys to the jail," the punishment is not appropriate for a finding of civil contempt. While this phrasing is a hallmark of civil contempt sanctions, it is not absolute. For example, our case law does not require that the contemnor control the amount of a fine; a discrete fine is an appropriate remedy for civil contempt. *See, e.g., Richelson*, 130 N.H. at 140 (defendant ordered to pay $300 fine). In this case, instead of a fine, the respondent requested additional visitation time in his *ex parte* motion for contempt. The trial court presumably found that increasing the respondent's visitation time would compel the petitioner to obey its orders.

Although stemming from the trial court's inherent contempt power, this exercise of coercive power is analogous to that granted by the legislature in RSA 458:17, V(a)(2) (2004). RSA 458:17, V(a)(2) allows a court that "finds repeated, intentional, and unwarranted interference" by a custodial parent with the visitation or custodial rights of the non-custodial parent to "order a change in [permanent] physical custody." RSA 458:17, V(a)(2). Through this statute, a severe remedy, modification of a permanent physical custody order, is available to the trial court for interference with visitation and custodial rights. It is not unprecedented then for the trial court to fashion as its own remedy, through its inherent contempt power, a mere ten hour per month increase in residual custodial time.

We recognize that children are not chargeable with the misconduct of their parents and should not be uprooted from their home in order to discipline a recalcitrant parent. *Webb*, 133 N.H. at 672. However, we conclude that the additional custodial time awarded to the respondent does not amount to uprooting the children.

 We disagree with the petitioner's argument that this sanction was in fact a criminal penalty. There is no indication in the record that the trial court sought to protect its authority and vindicate its dignity by issuing this particular contempt sanction. *Cf. Town of Epping*, 129 N.H. at 691 (language of the master's report indicated the master was vindicating the authority of the court and not the rights of the parties). Therefore, we find that the award of additional visitation time was within the trial court's discretion.

Lastly, the petitioner argues that the contempt sanction deprived her of a fundamental right, regarding the custody and rearing of her children, without the full due process protections required by the State and Federal Constitutions. We first address the petitioner's claim under the State Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

We agree with the petitioner that a parent's interest in decisions regarding the custody and rearing of children is a fundamental right protected by the due process provisions of the State and Federal Constitutions. *Provencal v. Provencal*, 122 N.H. 793, 797 (1982). Procedural due process requires that parties whose rights are affected have an opportunity to be heard. The right to be heard in custody and visitation cases encompasses the right to call and cross-examine witnesses, to be informed of all adverse evidence, and to challenge such evidence. *Chandler*, 142 N.H. at 409. However, we do not find that the petitioner's procedural due process rights were violated in this case.

 The petitioner had notice of the sanction sought by the respondent, additional custodial time, through his motion for contempt, a copy of which was delivered to the petitioner's counsel. The petitioner also had an opportunity to call and cross-examine witnesses, to be informed of evidence against her and challenge such evidence as due process requires. However, at the beginning of the hearing on the sanction, the petitioner's counsel waived these rights by agreeing to proceed by offer of proof. Therefore we find that the petitioner's procedural due process rights were not violated.

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *See Chandler*, 142 N.H. at 409; *Tower v. Leslie-Brown*, 326 F.3d 290, 298 (1st Cir. 2003). Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

*Affirmed.*

NADEAU, DUGGAN and GALWAY, JJ., concurred; BRODERICK, C.J., dissented.

BRODERICK, C.J., dissenting. Because I conclude, based upon the record before us, that the trial court erred as a matter of law in awarding the respondent additional visitation time as a result of the petitioner's contempt, I respectfully dissent. *See In the Matter of Giacomini & Giacomini*, 150 N.H. 498, 500 (2004). Children have independent interests in divorce proceedings and may not be used as pawns to punish a non-cooperative parent. *See Webb v. Knudson*, 133 N.H. 665, 672-73 (1990). While modification of custody or visitation may well be triggered as a consequence of contemptuous conduct by an offending parent, it should only occur upon an express and supportable finding that modification is in the best interests of the children.

The relevant facts giving rise to the contempt sanction are undisputed and fully recited by the majority. On appeal, the petitioner argues several errors with respect to the sanction, including: (1) that the court committed an unsustainable exercise of discretion in modifying the parties' custody order without considering and making findings as to the best interests of the children; and (2) that because the contempt sanction was criminal, rather than civil, the trial court erred in failing to afford her the procedures which accompany criminal contempt proceedings. As to the latter argument, the majority concludes that the contempt in this case was civil, rather than criminal. Because I believe that the specific contempt sanction in this case was improper because it did not involve a best interests analysis with requisite findings, I do not address the nature of the contempt itself.

We have previously stated that custody modifications are not a proper means of punishing a non-cooperative parent:

> Children are not chargeable with the misconduct of their parents and should not be uprooted from their home in order to discipline a recalcitrant parent. Indeed, the award of custody is not a device to reward or punish parents, and a violation of a court decree by one of the parties is not necessarily controlling on the question of custody. Thus ... an award of custody must ultimately be based upon the best interests of the child, and *may not be sustained as a means of enforcing the visitation rights of the noncustodial parent. Rather, the contempt powers of the court may be exercised to that end.*

*Webb*, 133 N.H. at 672-73 (quotation, citation and brackets omitted; emphasis added); *see Houde v. Beckmeyer*, 116 N.H. 719, 721 (1976). Here, the trial court ordered: *"Because of the contempt,* [the respondent] is awarded additional visitation time with the girls. He shall be allowed visits between 3:30 [p.m.] and 8:30 [p.m.] on non-custodial Sundays." (Emphasis added.) On their face, the trial court's words demonstrate that the additional visitation time awarded to the respondent was in direct response to the petitioner's contemptuous behavior, and to enforce the respondent's visitation rights. I see no meaningful difference between awards of custody and awards of visitation as a means to punish contempt and, therefore, I believe that the rule of *Webb*, that custody awards are not devices to punish or reward parents, applies to visitation awards. Because the trial court's award of additional visitation time to the respondent was a direct response to the petitioner's contemptuous behavior, rather than pursuant to a best interests finding, I believe that the trial court's order was not in keeping with the mandate of *Webb*.

The majority acknowledges *Webb*, but nevertheless concludes that "the additional custodial time awarded to the respondent does not amount to uprooting the children." In practice, however, what one child needs to feel secure and stable may differ significantly from what another child needs. Therefore, while five hours of visitation every other Sunday may have little to no effect on one child's feelings of security and stability, it may have a tremendous impact on those of another child. *Cf. Perreault v. Cook*, 114 N.H. 440, 443 (1974) (recognizing that "[t]he shuffling of a child back and forth between a father and mother can destroy his sense of security, confuse his emotions, and greatly disrupt his growth as an individual"). It is for the trial court to expressly consider the best interests of the children before a change in visitation is ordered. Contempt, by itself, can never justify a change in visitation or custody without an independent determination of the best interests of the children.

We have previously recognized that visitation arrangements are controlled by the best interests of the children. *Chandler v. Bishop*, 142 N.H. 404, 411 (1997); *Richelson v. Richelson*, 130 N.H. 137, 144 (1987). Although the trial court did not make an express finding that awarding additional visitation time to the respondent was in the best interests of the children, the majority concludes:

> We must assume that the trial court made subsidiary findings necessary to support its general ruling. In the absence of an explicit finding that the change in visitation was in the best

interests of the children, and in the absence of any evidence or allegation to the contrary, we will assume that the trial court found that the altered visitation schedule was not contrary to the best interests of the children.

(Citation omitted.) I disagree that we should assume the trial court made the necessary subsidiary findings to sustain its visitation award because the language of the trial court's order clearly demonstrates that no best interests analysis was deemed necessary. The trial court unequivocally stated, *"Because of the contempt,* [the respondent] is awarded additional visitation time with the girls." (Emphasis added.) Nothing in this statement implies that the court considered the best interests of the children in awarding the respondent additional visitation time, and I am not prepared to tread where the trial court elected not to go.

The majority states that in the absence of an explicit finding that modification of visitation was in the best interests of the children, "we will assume that the trial court found that the altered visitation schedule was not contrary to the best interests of the children." The majority also states:

> The court's overriding concern in structuring custody and visitation matters is the best interests of the child. In its order, the trial court did not make an explicit finding that altering the visitation schedule was in the best interest of the children. However, the petitioner offered no evidence and made no allegation that a change in the visitation schedule was not in the best interests of the children.

(Citation omitted.)

The relevant inquiry for purposes of modifying custody or visitation, however, is not whether a change would be *contrary* to a child's best interests, but whether such a change would be *in* the child's best interests. *See Richelson,* 130 N.H. at 145 (alteration of visitation schedule sustained where ruling was "unquestionably in the best interests of the child"); *cf.* RSA 458:17, V(a) (2004) (modification of custody due to repeated, intentional and unwarranted interference by a parent with the visitation rights of the other parent permissible if court determines that modification "would be in accordance with the best interests of the child"). Moreover, the petitioner does not have any burden where, as here, she was not the party seeking to modify the visitation schedule. To the contrary, the respondent, as the party seeking to alter the visitation schedule, bore the

burden of proof in that proceeding. *Cf. Webb*, 133 N.H. at 671 (party seeking to modify custody has burden of proof); RSA 458:17, V(b) (2004) (same); *see Preston v. Mercieri*, 133 N.H. 36, 42 (1990) (referring to visitation as a custody matter). *But see In the Matter of Nelson & Horsley*, 149 N.H. 545, 548 (2003) (in deciding whether granting custodial rights to unrelated third party over express objection of sole parent violates parent's State and federal constitutional rights, noting that visitation is a far lesser intrusion or assertion of control than custody, and therefore not nearly as invasive of parents' rights).

Accordingly, I disagree with the majority that the sanction ordered here should be sustained. The trial court failed to make an express finding that awarding the respondent additional visitation time with the children, as a result of the petitioner's contempt, was in the children's best interests. Consistent with our jurisprudence, I believe that justice demands such a finding. Accordingly, I respectfully dissent.