Hillsborough-northern judicial district
No. 2005-110

IN THE MATTER OF BRIAN STALL & LYNNE STALL

Submitted: November 16, 2005
Opinion Issued: December 30, 2005

*Brian Stall*, by memorandum of law, *pro se*.

*Gage & Woods, P.L.L.C.*, of Exeter (*Stephen J.C. Woods* on the brief), for the respondent.

BRODERICK, C.J. The respondent, Lynne Stall, appeals the order of the Superior Court (*Conboy*, J.) requiring her to pay child support, retroactive to May 1, 2004, to the petitioner, Brian Stall; finding her in contempt; and requiring her to reimburse the petitioner for certain expenses. We affirm in part, vacate in part and remand.

I

The record supports the following facts. The parties were divorced in Florida in 1999. The Florida divorce decree gave the respondent primary physical custody of the parties' three children and gave the petitioner visitation rights. After the divorce, the petitioner relocated to New Hampshire.

In December 2003, the petitioner petitioned the superior court to register the Florida decree in New Hampshire and to modify the Florida custody order to award him primary physical custody of the children. *See* RSA 546-B:39 (Supp. 2005); *see also* RSA 458-A:3, :14 (2004). On April 2,

2004, the parties stipulated that: (1) the Florida decree would be registered in New Hampshire; (2) the petitioner would be granted physical custody of the parties' children; (3) the petitioner's child support obligation would terminate as of January 8, 2004; (4) the respondent would forward the children's personal effects by common carrier within ten days of the order; and (5) the petitioner would pay for the transport of the children's personal effects for an agreed-upon price. The superior court approved this stipulation.

A few weeks later, on April 26, 2004, the petitioner filed a petition in Florida, requesting that the Florida court eliminate his child support obligations and require the respondent to pay child support. On September 21, 2004, the Florida court vacated the provisions in the original divorce decree that required the petitioner to pay child support, but declined to enter any further orders on child support because the parties had registered the divorce decree in New Hampshire. The court determined that it no longer had jurisdiction and that New Hampshire now had jurisdiction with respect to child support.

On October 1, 2004, the petitioner asked the superior court to find the respondent in contempt for failing to transport the children's personal effects, as agreed. On October 19, 2004, he petitioned the superior court to modify the parties' child support obligations, requesting that the respondent be required to pay child support. See RSA 546-B:41, :47-:49, :51 (Supp. 2005). The respondent alleges that she was served with the petition on November 1, 2004.

Following a hearing, the court ordered the respondent to pay child support to the petitioner retroactive to May 1, 2004, "because the file indicates that [the petitioner] first sought child support in late April[] 2004 in the Florida proceeding." To calculate child support, the trial court used the respondent's prior earnings of $30,000 per year, finding that she was voluntarily unemployed as a result of moving to Maine in May 2004 to live with her partner. Additionally, the court found the respondent in contempt for failing to transport the children's belongings as previously ordered and directed the respondent to pay the petitioner $1,300 for purchases he made on behalf of the children caused by the transport delay. This appeal followed.

## II

The respondent first argues that the trial court erred by requiring her to pay child support retroactive to May 1, 2004, a few days after the Florida petition to modify was filed, instead of requiring her to pay child support retroactive to November 1, 2004, the date on which she alleges the New Hampshire petition to modify was served. See RSA 458-C:7, II (2004);

*see also* RSA 546-B:48. She asserts that pursuant to RSA 458-C:7, II, the trial court should have used the date of service of the New Hampshire petition and not the date upon which she arguably received notice of the Florida petition to modify. Thus, the issue for our review is whether the trial court erred by making its modification order retroactive to May 1, 2004.

When construing the meaning of a statute, we are the final arbiters of legislative intent. *In the Matter of Jerome & Jerome*, 150 N.H. 626, 628 (2004). We examine the language of the statute, ascribing to its words their plain and ordinary meanings. *Id.* We interpret statutes in the context of the overall legislative scheme and not in isolation. *Id.*

RSA 458-C:7, II governs the date upon which the modification of a child support order becomes effective. This statute provides:

> Any child support modification shall not be effective prior to the date that notice of the petition for modification has been given to the respondent. "Notice" means:
> (a) Service as specified in civil actions; or
> (b) Acceptance of a copy of the petition, as long as the petition is filed no later than 30 days following said acceptance, and as long as the petitioner provides proof of acceptance by a certified mail receipt. Nothing in this subparagraph shall be construed to affect service as required by law.

The plain meaning of this provision is that a New Hampshire trial court may modify a child support order retroactive only to the date upon which the responding party has either been served with or accepted, by certified mail, a copy of the petition upon which the New Hampshire court has ruled.

By making its order retroactive to the date upon which the court found that the respondent "was put on formal notice" that the petitioner sought child support, the trial court, in effect, interpreted the word "notice" to mean "knew or reasonably should have known." This was error. RSA 458-C:7, II defines the word "notice" specifically to mean either the date upon which the responding party received service or accepted, by certified mail, a copy of the petition upon which the New Hampshire court ruled. Had the legislature intended the word notice to have a broader meaning, it could have so stated. We interpret legislative intent from the statute as written, and, therefore, we will not consider what the legislature might have said or add words that the legislature did not include. *JTR Colebrook v. Town of Colebrook*, 149 N.H. 767, 770 (2003).

We therefore vacate the trial court's order modifying the respondent's child support obligations retroactive to May 1, 2004, and remand for further proceedings consistent with this opinion. On remand, the trial court shall make its modification order retroactive to the date upon which the respondent was served with or accepted, by certified mail, a copy of the New Hampshire petition, as set forth in RSA 458-C:7, II.

### III

The respondent next contends that the trial court impermissibly imputed income to her after finding that she was voluntarily unemployed. She concedes that she is voluntarily unemployed, but asserts that the trial court should not have imputed income to her because the reason she is unemployed is that she moved to Maine to be closer to her children and because, when she became unemployed, she had no child support obligation.

RSA 458-C:2, IV(a) (2004) provides that "[t]he court, in its discretion, may consider as gross income the difference between the amount a parent is earning and the amount a parent has earned in cases where the parent voluntarily becomes unemployed or underemployed, unless the parent is physically or mentally incapacitated."

Whether a party is voluntarily unemployed is a question for the fact finder, whose decision will not be disturbed on appeal if supported by evidence in the record. *See In the Matter of Donovan & Donovan*, 152 N.H. 55, 58-59 (2005). Trial courts have broad discretion to review and modify child support awards. *Id.* at 59. They are in the best position to determine the parties' respective needs and their respective abilities to meet them. *Id.* Accordingly, we will set aside a modification order only if it clearly appears on the evidence that the court's exercise of discretion was unsustainable. *Id.*

The record supports the trial court's finding that the respondent was voluntarily unemployed. At the hearing, the respondent testified that she last worked in May 2004, as an assistant to a real estate broker earning $30,000 per year, just before moving to Maine to live with her partner. She also testified that, although she experienced "a bout of depression" for approximately five months in 2004, she did not have a disability and has not received a diagnosis from any doctor that her depression rendered her unable to work. The respondent further testified that she was looking for employment, but had not yet been offered a position. Given this testimony, we hold that the trial court reasonably found that the respondent was voluntarily unemployed.

Although the respondent argues that the trial court failed to give proper consideration to her motive for moving (in part, to be closer to her children), or the fact that when she became unemployed, she had no child support obligation, "[o]ur task on appeal is not to decide whether we would have found differently but to determine whether a reasonable person could find as did the trial judge." *Smith v. N.H. Dep't of Revenue Admin.*, 148 N.H. 536, 539 (2002) (quotation omitted). Given the record before us, we cannot say that the trial court's finding that the respondent was voluntarily unemployed was an unsustainable exercise of discretion. We further conclude that, in light of its finding that the respondent was voluntarily unemployed, the trial court did not err by imputing $30,000 in annual income to her. *See* RSA 458-C:2, IV(a).

## IV

Finally, the respondent argues that the trial court impermissibly found that she was in contempt of the court's April 2004 order requiring her to transport the children's belongings within ten days of the order and erroneously ordered her to pay the petitioner $1,300.

The contempt power is discretionary and the proper inquiry is not whether we would have found the respondent in contempt, but whether the trial court unsustainably exercised its discretion. *In the Matter of Giacomini & Giacomini*, 150 N.H. 498, 500 (2004).

In April 2004, the parties stipulated that the respondent would "forward by common carrier all of the children's personal effects to include clothing, electronic equipment, [one child]'s rock collection and personal items within 10 days of this Order." In return, the petitioner agreed to "pay the cost with prior agreement as to cost."

The trial court found that the respondent failed to ship the children's belongings within ten days of the April 2004 order and, thus, was in contempt of that order. This finding is supported by the evidence. At the hearing, the petitioner testified that the respondent arranged to have the children's belongings shipped by a private moving company, rather than a "common carrier," as agreed. He also testified that the belongings were not shipped for several weeks after the trial court's order. He estimated that he paid approximately $1,300 to clothe the children during the summer, while they were waiting for the petitioner to send their belongings.

For her part, the respondent testified that she had movers box all of the children's belongings and informed the petitioner that the cost of boxing and moving the belongings was approximately $1,300. Among the belongings the respondent had boxed were clothes, computers, stereos, and televisions. After having informed the petitioner of this on "several

occasions," the respondent "decided to move to Maine" and told the petitioner that she needed him to arrange to have the children's belongings picked up. The respondent's parents eventually picked up the boxes, determined that the children did not need most of what the respondent had packed, and then shipped the remaining belongings to New Hampshire for $300.

■ Based upon this evidence, the trial court reasonably could have determined that the respondent violated the April 2004 order by failing to ship the children's effects by common carrier at an agreed price within ten days of its order. Accordingly, we hold that the trial court sustainably exercised its discretion when it found that the respondent was in contempt of the April 2004 order.

The respondent argues that the trial court's contempt sanction was criminal in nature and that the trial court failed to afford her the applicable procedural protections required of criminal contempt proceedings.

■ "The difference between civil and criminal contempt is the character of the punishment." *In the Matter of Kosek & Kosek*, 151 N.H. 722, 727 (2005). In civil contempt, the punishment is remedial, coercive and for the benefit of the complaining party. *Id.* Civil contempt proceedings may result in money fines payable to the complainant or in an indeterminate jail sentence until the contemnor complies with the court's order. *Id.* By contrast, the purpose of prosecution for criminal contempt is to protect the court's authority and vindicate its dignity. *Id.* Unlike the civil contemnor, the criminal contemnor may be imprisoned for a determinate amount of time. *Id.*

■ We disagree with the respondent that the court's sanction in this case was, in fact, a criminal penalty. *See id.* at 728. The court, in effect, treated the petitioner's motion as one for damages. By granting this motion and awarding the petitioner $1,300 to reimburse him for the money he spent to clothe the children in the summer, the trial court imposed a punishment that was remedial and for the petitioner's benefit. "There is no indication in the record that the trial court sought to protect its authority and vindicate its dignity by issuing this particular contempt sanction." *Id.* Accordingly, we hold that the sanction was civil, not criminal.

The respondent also argues that she was unable to comply with the court's order and that the court failed to take this into account. *See Bursey v. Bursey*, 145 N.H. 283, 287 (2000). The evidence does not compel such a finding.

The respondent finally contends that the record does not support the trial court's finding that the amount the petitioner paid to clothe the children while they were waiting for their own clothes was $1,300. As the petitioner's testimony supports this finding, we uphold the trial court's award.

*Affirmed in part; vacated in part; and remanded.*

NADEAU, DALIANIS, DUGGAN and GALWAY, JJ., concurred.